## ARTHUR C. DUCAT

### *v.*

## THE CITY OF CHICAGO.

1. FOREIGN INSURANCE COMPANIES—*not citizens within the meaning of the 2d section of the 4th article of the Constitution of the United States.* A corporation aggregate may be a citizen, in the sense in which the term citizen is used in that part of the Constitution which speaks of the judicial power of the United States. It may enforce legal rights, or may obtain redress for wrongs, not only in the State of its creation, but also in the other States of the Union, by virtue of the comity between the States. But, a corporation aggregate is not a citizen, within the meaning of that clause of the Constitution which declares, " the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States."

2. COMITY—*between States not obligatory when declared to be contrary to public policy.* The right of a corporation created in one State, to do business and make contracts, in the full enjoyment of its powers, in another State, is a right based upon the comity between the States, and is a voluntary act of the sovereign power, but when contrary to good policy, or when prejudicial to the interests of the State, the comity ceases to be obligatory.

3. So, an insurance company, incorporated under the laws of another State, coming into this State to do business and make profits, may be taxed, and the legislature may rightfully discriminate between such corporations and domestic

corporations of the same character, when, in their judgment, the policy and interests of the State demand it.

4.  TAXATION—*of persons and property must be uniform—not so as to corporations.*  The element of uniformity is necessary to the validity of a tax levied upon the persons and property of the citizen, but a tax imposed upon a corporation as such, is not a tax on the persons or property of the corporators or stockholders.  It is the artificial being, the mere legal entity which is taxed, and the tax is paid out of the funds of such legal creation, known as a corporation, and not by corporators or stockholders in their personal character.  Immunities claimed for the individual members of a corporation, cannot be extended to the corporation itself.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Chief Justice, presiding.

The opinion states the case.

Messrs. SCAMMON, McCAGG & FULLER, for the appellant.

Mr. S. A. IRVIN, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of debt, brought in the Superior Court of Chicago, by the City of Chicago, against Arthur C. Ducat, to recover of him, as agent of four several insurance companies, located and established in the State of New York, by virtue of the laws of that State, for the sum of two dollars upon every hundred dollars of premiums he, as such agent, had received on policies issued by said companies, severally, while they were doing business as such companies in the city of Chicago.

Besides the plea of *nil debet*, on which an issue was made up, the defendants filed a special plea, to which a demurrer was sustained, and by consent the cause was tried by the court on the general issue.

The court found for the plaintiff, thirty-seven hundred and fifty-six 39-100 dollars, as the debt due, for which judgment was rendered, together with costs.

To reverse this judgment, the defendant prosecutes this appeal, assigning as error, sustaining the demurrer to the special plea.

The claim of the city to recover of the defendant, is founded upon the fifth section of the Revised Charter of the City of Chicago, (Pr. Laws 1863, pp. 98, 99,) the provisions of which are sufficiently set forth in the declaration.

The special plea, which was demurred out, presented the question of the power of the legislature to make a discrimination between foreign and domestic insurance companies, by taxing them on the premiums received, and letting the domestic corporations go untaxed on the same, the former having complied with the laws of the State, permitting them to exercise their faculties in this State.

Appellant takes the ground, that after this State has authorized insurance companies to establish agencies and do business here, it cannot tax their property more, or differently, than the property of citizens of the State is taxed.

This is an important and a very interesting question, and we have very carefully considered the points made by appellant, and the arguments in their support, and have reached the conclusion, that corporations are not citizens within the meaning of section 2 of article 4, of the Constitution of the United States.

Appellant's proposition is, that corporations created by the laws of New York, are, to the intents and purposes for which they are created, citizens of New York, and as such, entitled to all the benefits of the section above cited, that " the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States."

We have examined all the authorities cited on both sides of this proposition, and cannot find it has ever been decided, by

any court, that corporations are citizens, within the sense and meaning of this clause.

The cases of the *Louisville, C. & C. R. R. Co.* v. *Letson*, 2 Howard 497, and *Covington Drawbridge Co.* v. *Shepherd*, 20 ib. 227, do not establish the proposition in plaintiff's favor. In both cases, the question was one of jurisdiction, and no reference is made in either case to this clause of the Constitution, and therefore are not decisive of the point. In the last named case, Chief Justice TANEY, in delivering the opinion of the Court, said, that "in the case of the *LaFayette Insurance Company* v. *French et al.*, 18 ib. 404, the declaration stated, that the corporation itself was a citizen of Indiana. Now, no one, we presume, ever supposed that the artificial being created by an act of incorporation, could be a citizen of a State in the sense in which that word is used in the Constitution of the United States, and the averment was rejected, because the matter averred was simply impossible."

By referring to the case in 18 Howard 404, it appears, the opinion of the majority of the court was delivered by Mr. Justice CURTIS, and in it he says, " The averment that the company is a citizen of Indiana, can have no sensible meaning attached to it. This court does not hold that either a voluntary association of persons, or an association into a body politic, created by law, is a citizen of a State, within the meaning of the Constitution."

The case in 2 Howard, decides nothing more than that, for all the purposes of suing and being sued, a corporation created by, and doing business in, a particular State, is substantially a citizen of the State which created it, within the meaning of the Constitution and law of Congress, conferring jurisdiction on the courts of the United States, in cases between citizens of different States. Having this right conceded to it, a corporation may properly be considered a citizen of the State of its creation, for the purpose of bringing suit, but we are inclined to think the concession was an unfortunate

176        DUCAT *v.* CITY OF CHICAGO.        [Sept. T.,

Opinion of the Court.

one.   The first case in which the question came up, was the case of *Hope Insurance Company* v. *Boardman*, 5 Cranch 57. It was argued for the plaintiff in error, the insurance company, by Mr. Ingersoll, who made the point that a corporation aggregate could not be a citizen of any State, and there was no averment of citizenship in the declaration, of the individuals who composed the corporation.

Referring to *Bingham* v. *Cabot*, 3 Dallas, 382, which case holds, it was necessary to set forth the citizenship, or alienage when a foreigner was concerned, of the respective parties, in order to bring the case within the jurisdiction of the court, and that the record, in that respect, was defective.

Mr. ADAMS, afterwards President of the United States, argued for the defendant in error, and said, speaking of the declaration in the case, that the defendant was described as " a company legally incorporated by the legislature of the State of Rhode Island and Providence plantation, and established at Providence, in the said district." He said, "the term *citizen* could not with propriety be applied to a corporation aggregate.   It could only be a citizen by intendment of law. It is only a moral person; but it may be a citizen *quoad hoc*, that is, in the sense in which the term citizen is used in that part of the Constitution which speaks of the jurisdiction of the judicial power of the United States.   The term is indeterminate in its signification.   It has different meanings in different parts of the Constitution.   When it says, ' the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States,' the term *citizens* has a meaning different from that in which it is used in describing the jurisdiction of the courts."

There was pending in that court, and argued at the same time, the case of the *Bank of the United States* v. *Deseaux et al.*   It was argued by the most distinguished lawyers of that day, and the opinion, in the last case, was, that no right was conferred upon the Bank by the act of incorporation, to

sue in the Federal Courts; but, following a decision in 12 Modern Reports, a book of questionable authority, and finding that the English judges had declared that they could look beyond the corporate name, and notice the character of the individual corporators, it was decided, that a corporation aggregate, composed of citizens of one State, might sue a citizen of another State in the Circuit Court of the United States. In the course of the opinion, Chief Justice MARSHALL said, " that invisible, intangible, and artificial being, that mere legal entity, a corporation aggregate, is certainly not a citizen, and consequently cannot sue or be sued in the courts of the United States, unless the rights of the members, in this respect, can be exercised in their corporate names," and in casting about for authority to sustain such a proposition, the distinguished Chief Justice quoted and relied upon 12 Modern!

The case in 2 Howard, *supra,* has modified this opinion in 5 Cranch, adopting the argument of Mr. ADAMS in his Hope Ins. Co. case, ibid. that a corporation was *quoad hoc* a citizen for the purpose of suing and being sued.

It seems to us, there is much more sound sense, and a more just appreciation of this subject, to be found in the view expressed by Chief Justice TANEY, in the case of the *Bank of Augusta* v. *Earle,* 13 Peters 519, cited with so much deserved approbation by appellant's counsel, in which he places the power of a corporation, created in one State, to make contracts in another State, upon the comity between the States, and says that the comity thus extended, is no impeachment of sovereignty, it being the voluntary act of the State by which it is offered, but inadmissible when contrary to its policy or prejudicial to its interests.

This power, then, existing by comity only, and such comity inadmissible when it is contrary to the policy of a State to admit it, the pretense that in this respect the corporation is vested with all the rights of a citizen of another State, vanishes. The same comity which recognizes their contracts,

23—48TH ILL.

should recognize their power to enforce them by suit, otherwise the power to contract would be, in a great degree, nugatory.

Appellant's counsel refer to *Campbell* v. *Morris*, 3 Harris & McHenry, 554, but it decides nothing pertinent to the case now before us. In construing the 2d section of the 4th article, the court endeavors to affix a meaning to the words "immunities" and "privileges," and concluding, they do not mean the right to hold office, or to possess the elective franchise; the court thought they meant that the citizens of all the States should have the peculiar advantage of acquiring and holding real as well as personal property, and that such property should be protected and secured by the laws of the State, in the same manner as the property of the citizens of the State is protected. That it meant that such property should not be liable to any taxes or burdens which the property of the citizen is not subject to.

We accept this construction, and fully accord with the reasoning and conclusion in *Wiley* v. *Parmer*, 14 Ala. 627, and the principle sanctioned in *Oliver* v. *Washington Mills*, 11 Allen 268, has been often declared by this court. Non-resident owners cannot be taxed higher than residents, nor are they, under the law we are considering. The individuals composing the corporation may be citizens, but the ownership of their corporate property is not in the individual members, but in the corporation. As was said by Chief Justice Taney, in the case in 13 Peters, *supra*, if the members of a corporation are to be regarded as individuals, carrying on business in their corporate names, and therefore entitled to the privileges of citizens in matters of contract, it is very clear, they must at the same time take upon themselves the liabilities of citizens, and be bound by their contracts in like manner. The result of this would be, as he very justly says, to make a corporation a mere partnership in business, in which each stockholder would be liable to the whole extent of his property for the

debts of the corporation; and he might be sued for them in any State in which he might happen to be found. The clause of the Constitution referred to, he says, certainly never intended to give to the citizens of each State the privileges of citizens of the several States, and at the same time to exempt them from the liabilities which the exercise of such privileges would bring upon individuals who were citizens of the State. This would be to give the citizens of other States far higher and greater privileges than are enjoyed by the citizens of the State itself. Besides, it would deprive every State of all control over the extent of corporate franchises proper to be granted in the State, and corporations would be chartered in one to carry on their operations in another. He further says, "Whenever a corporation makes a contract, it is the contract of the legal entity; of the artificial being created by the charter, and not the contract of the individual members. The only rights it can claim, are the rights which are given to it in that character, and not the rights which belong to its members as citizens of a State."

These passages, from that opinion, settle us in our convictions, that corporations have no *status* in States, as citizens of the State creating them, and when they come into this State to do business and make profits, a discrimination can be rightfully made between them and our domestic corporations of the same character; that, if it should be deemed good policy, by the legislature, they could be so taxed, or otherwise burdened as to compel them to leave the State. They may be regarded as a benefit or a nuisance, according to the caprice of the legislature, they not being citizens in any approved sense of that term, which can be correctly understood in no other sense than that in which it was understood in common acceptation, when the Constitution was adopted, and as it is universally explained by writers on government, without an exception. A citizen is of the *genus homo*, inhabiting, and having certain rights in some State or district. Such a being, if a citizen of

New York, or of any other State of this Union, is, for many
purposes, a citizen of this State, and of all the other States,
and is entitled to all such privileges and immunities, within
the purview of the Constitution, as the citizens of those States,
permanently residing therein, are entitled to.   These are per-
sonal privileges, many of which are specified in the case of
*Corfield* v. *Coryell*, 4 Wash. C. C. R. 371, cited approvingly
by appellant.

These privileges attach to him in every State into which he
may enter, as to a human being—as a person with faculties to
appreciate them, and enjoy them, not to an intangibility, a
mere legal entity, an invisible artificial being, but to the man,
made in God's own image.

The individual citizen has the power of moving from place
to place, as his business or his pleasure may prompt.   He has
rights which are so important, as to make it desirable that they
should be uniform throughout this broad and expanded Union,
which, in order to promote mutual friendship and free social,
or business intercourse among the people of the several States,
were placed, by this clause of article 4, under the protection
of the federal government.   In the case of corporations, no
such reasons exist.   Corporations, in the States of their crea-
tion, are not entitled to the privileges, or "rights," as appellant
claims, of the citizens of such States.   They cannot vote at
elections—they are ineligible to any public office—they cannot
be executors, administrators, or guardians.   They are artificial
beings, endowed only with such powers, and privileges, and
rights, as their creator thought proper to bestow upon them.
They have not the power of locomotion, and, of course, are
not fit subjects, in the view above expressed, of the constitu-
tional clause on which this cause turns.   Not being able to go
into the States of the Union, at their corporate will and plea-
sure, and exercise their faculties therein, they cannot, by any
reasonable and just view of that clause, be deemed as coming
within its spirit or object.

This tax of two dollars imposed on these companies, is not a tax on the persons or property of the corporators or stockholders. It is the artificial being, the mere legal entity which is taxed, and the tax is paid out of the funds of the corporation. The immunity claimed by appellant, is claimed on behalf of the corporation as such, and not in behalf of the individual stockholders, and cannot be allowed.

As was said by the Supreme Court of New Jersey, in *Tatem* v. *Wright et al.*, 3 Zabriskie, 429, the business transacted by the appellant, is the business of the several corporations whom he represents, and although the several stockholders are interested in that business, and their profits may be affected by the taxes imposed, yet, as they choose to transact it through the medium of an incorporated name, having no personal character or rights, and not properly within the designation of a citizen, they must take their charters with all the disabilities properly belonging to them, one of which is, if an incorporation goes beyond the limits of the sovereignty which created it, it must submit to such terms as such other sovereignties see fit to impose.

The views we have here expressed, render it unnecessary to consider the authorities cited by appellee. We have looked into some of them, and they fortify the positions the city has taken.

The point made, that this is a tax, and not uniform, and therefore unconstitutional, is fully answered by the case of the *People* v. *Thurber*, 13 Ill. 554, and the *Fireman's Benevolent Association* v. *Lounsbury*, 21 ib. 511

There being no error in the record, the judgment is affirmed.

*Judgment affirmed.*