Elston *v.* Piggott *et al.*

No. 11,047.

## ELSTON *v.* PIGGOTT ET AL.

| | |
|---|---|
| 94 | 14 |
| 124 | 568 |
| 94 | 14 |
| 129 | 224 |
| 94 | 14 |
| 134 | 219 |
| 94 | 14 |
| 143 | 477 |
| 94 | 14 |
| 146 | 109 |
| 94 | 14 |
| 149 | 477 |
| 149 | 484 |
| 94 | 14 |
| 153 | 203 |
| 153 | 535 |
| 94 | 14 |
| 164 | 90 |
| e164 | 92 |

FOREIGN CORPORATION.—*Judgment.*—*Decree of Foreclosure.*—*Title.*—*Abatement.*—A decree of foreclosure and title acquired under a sale pursuant thereto by a foreign corporation plaintiff can not be questioned upon the ground that the corporation had not filed a power of attorney as required by section 3022, R. S. 1881, the fact being available only by answer in abatement.

SAME.—*Comity.*—*Right to Purchase, Hold and Convey Lands.*—A foreign corporation, in whose favor a decree is rendered, may, in this State, purchase lands at judicial sale thereon and hold and convey the same, as there is no statute forbidding it.

SAME.—*Constitutional Law.*—*Title to Real Estate.*—A foreign corporation had commenced a suit to foreclose a mortgage in the United States Circuit Court before the statute, R. S. 1881, sections 3029, 3030, were enacted, and obtained a decree afterwards. It began another suit against another party in that court after that statute took effect, and still later it became the purchaser of lands sold at judicial sale to satisfy its first decree, and took a deed therefor.

*Held,* that the corporation took title, notwithstanding the statute, which is void so far as by its terms it undertakes to affect the title.

PARTITION.—*Effect on Title Afterwards Acquired.* — *Demand.* — *Ejectment.*—*Estoppel.*—*Tenants in Common.*—A., holding and claiming title to two-thirds undivided of a tract of land acquired by purchase from the assignee in bankruptcy of B., brought suit against the wife of B., who by reason of the sale had, under the statute, become the owner in fee of the remaining third. At the same time A. held by assignment a certificate of purchase of the whole tract, made to satisfy a decree against B. and wife upon a mortgage executed by both, the time for redemption not having expired at the termination of the suit for partition which resulted in assigning to A. and the wife of B. in severalty shares as above. Subsequently, A. by reason of non-redemption took a deed upon the certificate.

*Held,* that A. was not estopped by the decree in partition from asserting the new title thus acquired.

*Held,* also, that the certificate acquired by A. while a tenant in common with B.'s wife did not inure to the benefit of both, inasmuch as their cotenancy did not give rise to any relation of trust or confidence.

*Held,* also, that A. might maintain ejectment against the wife of B. without calling upon her to redeem, or demanding possession.

JUDICIAL SALE.—*Right of Tenant in Common to Purchase.*—A tenant in common has a right to purchase at a judicial sale his co-tenant's interest in the joint property.

From the Montgomery Circuit Court.

*T. H. Ristine, H. H. Ristine, E. C. Snyder, G. D. Hurley, B. Crane, T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker* and *E. Daniels,* for appellant.

*G. W. Paul* and *J. E. Humphries,* for appellees.

ELLIOTT, J.—The first question which we are required to decide is this : Is a decree and sale obtained by a trustee of a foreign corporation, whose agent has not filed a power of attorney as required by the act of June 17th, 1852, so destitute of force as to pass no title to the trustee who becomes a purchaser at the foreclosure sale ?   We think this question is not a difficult one.   The failure of the agent of the corporation to file the power of attorney required by the statute was a matter to be pleaded in abatement in the suit in which the decree was rendered.   *Walter A. Wood, etc., Co.* v. *Caldwell,* 54 Ind. 270 (23 Am. R. 641) ; *Domestic Sewing Machine Co.* v. *Hatfield,* 58 Ind. 187 ; *Daly* v. *National Life Ins. Co.,* 64 Ind. 1 ; *Singer Manufacturing Co.* v. *Brown,* 64 Ind. 548 ; *Johnson* v. *State,* 65 Ind. 204 ; *Smith* v. *Little,* 67 Ind. 549 ; *Behler* v. *The German Mutual Ins. Co.,* 68 Ind. 347 ; *The American Ins. Co.* v. *Wellman,* 69 Ind. 413 ; *Singer Manufacturing Co.* v. *Effinger,* 79 Ind. 264 ; *Finch* v. *Travellers Ins. Co.,* 87 Ind. 302.   The question as to the right of the parties to plead matters in abatement was settled by the decree of the Federal court, and can not be litigated in an attack upon the decree or the sale made under it.   If, therefore, the trustee should be regarded as the corporation for which he was trustee, still no question as to the right to prosecute the suit can now be made, for the decree put an end to all such questions.

It follows as a necessary consequence, that, having obtained a valid decree, the plaintiff in the suit had a right to enforce it in the usual manner.   The decree settled all questions as to the power of the court to render it, and there can be no interference with the complete execution of the decree for any cause involved in the suit which resulted in the decree.   The

time for objecting that there was no right to prosecute the foreclosure suit has gone by, and the decree can not be rendered nugatory for a cause which might have constituted ground for a plea in abatement.

A plaintiff who has a valid decree has all the incidents of such a decree, and necessarily the right to have it executed according to law. It would be very strange if a plaintiff having a valid decree should not be allowed to take any steps to secure its benefit, by having it executed. A valid decree is always enforceable. To be sure, some act may occur subsequent to its rendition which may destroy its force; but this is a very different question from the one here under immediate discussion, for here the question is, can the enforcement of the decree be defeated because the plaintiff would not have been entitled, had defence been made, to maintain his suit? We are perfectly satisfied that the enforcement of a decree in favor of a foreign corporation can not be prevented by showing a failure to file a power of attorney, and that such a failure will not invalidate a title acquired under the decree.

The second question is: Can a foreign corporation, in whose favor a decree is rendered, hold and convey real estate purchased under the decree in cases where there is neither a prohibitory statute, nor a statute granting such right? We state the question as the record presents it; for the inquiry is not as to the general power to hold real estate, but as to the power to acquire it in payment of debts. The question really narrows to a compass more limited than that embraced in the question as we have stated it, for it comes to this: Has the foreign corporation a right to buy at execution sales made on judgments in its favor? That the question is thus limited is plain when it is brought to mind that an authority to do an act necessarily implies authority to do whatever is a necessary incident of the principal act. It seems clear that the right to buy necessarily implies the power to hold and enjoy what is bought. The right to buy would be a barren right without the authority to hold and enjoy the property purchased.

Foreign corporations are allowed to transact business in our State, and for many years no restrictions were placed upon them. Our reports contain many cases recognizing their right to do business within our borders. Liens have been enforced in their favor; titles have been quieted in them; possession of land has been awarded them, and contracts have been enforced in their behalf. We have found no case questioning their right to do business in this State, nor do we see how this right can be questioned, except where there is a statute directly bearing upon the subject, for it has long been the law that a corporation may transact business, within the scope of its corporate powers, beyond the State which gave it existence. *Bank of Augusta* v. *Earle,* 13 Peters, 519, 592; *Christian Union* v. *Yount,* 101 U. S. 352.

It is true that corporations are not, in a strict sense, citizens of the United States, and can not claim immunities upon that ground. *Paul* v. *Virginia,* 8 Wal. 168; *Ducat* v. *Chicago,* 10 Wal. 410; *LaFayette Ins. Co.* v. *French,* 18 How. 404; *Ducat* v. *Chicago,* 48 Ill. 172; *People* v. *Fire Association,* 92 N. Y. 311. Although a corporation can not claim the protection of the Federal Constitution on the ground of citizenship, it is, nevertheless, entitled to do business, until forbidden by statute, in other States than that by which it was created. It was said by the Supreme Court of the United States in *Bank of Augusta* v. *Earle, supra:* "We think it well settled, that by the law of comity among nations, a corporation created by one sovereignty is permitted to make contracts in another, and to sue in its courts; and that the same law of comity prevails among the several sovereignties of this Union." This doctrine is strongly re-asserted in the later case of *Christian Union* v. *Yount, supra.* This principle of the comity of nations is part of the common law, and is by long settled rules, as well as by positive statute, engrafted on our law. Story Conflict of Laws, 36, 37; *Thompson* v. *Waters,* 25 Mich. 214 (12 Am. R. 243); *Curtis* v. *McCullough,* 3 Nev. 202.

In the absence of a statute prohibiting it, corporations may, it has often been held, acquire property in a foreign State. This doctrine is declared in *Cowell* v. *Springs Co.*, 100 U. S. 55, where it was said, in speaking of the position that a corporation could not acquire property in a foreign State: "The answer to this position is found in the general comity which, in the absence of positive direction to the contrary, obtains through the States and Territories of the United States, by which corporations created in one State or Territory are permitted to carry on any lawful business in another State and Territory, and to acquire, hold, and transfer property there equally as individuals." But in the present case we need not go to this length, although the authorities would fully warrant us in doing so, for the question here is a much narrower one.

It is certainly true that an execution plaintiff may, unless forbidden by statute, bid in property at his own sale, and he who asserts the contrary must produce the statute. A person, artificial or natural, resident or non-resident, having a right to litigate, has substantially the same rights as ordinary litigants, unless, indeed, there is some statute restricting them. If a corporation has a right to a judgment or decree, it necessarily follows that it may enforce it by purchase of the property seized under the process issued on the judgment or decree.

It is generally held that States possess the power to repeal the law of comity, or to refuse to recognize it when contrary to the policy of the State. *Bank* v. *Earle, supra; Myers* v. *Manhattan Bank*, 20 Ohio, 20 ; *Runyan* v. *Coster*, 14 Peters, 122 ; *U. S., etc., Co.* v. *Lee*, 73 Ill. 142 (24 Am. R. 236) ; *People* v. *Fire Ass'n, supra.* As foreign corporations are not citizens of the United States within the meaning of the Constitution, the law of comity may be denied to them. *Paul* v. *Virginia, supra; Liverpool Ins. Co.* v. *Mass.*, 10 Wal. 566 ; *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535. But we do not think our Legislature has denied the rights of foreign corporations to buy and hold real estate under sales made upon executions and

decrees. We do not regard the statute of March, 1861, as denying corporations the right to purchase lands in payment of debts, and we know of no case intimating such a doctrine. In many instances property rights of corporations are protected as those of natural persons. A charter confers rights which are within the constitutional provision forbidding the enactment of laws impairing the obligation of contracts. A decision giving peculiar emphasis to this familiar rule is *Travellers Ins. Co.* v. *Brouse,* 83 Ind. 62. So, too, are they within the provision prohibiting the taking of property without compensation. *Erie R. W. Co.* v. *State,* 31 N. J. L. 531. For purposes of taxation, foreign corporations are regarded as citizens. *State of Indiana* v. *American Ex. Co.,* 7 Bissell, 227. In *Lumbard* v. *Aldrich,* 8 N. H. 31, it was said: "If foreign corporations may sue here, they must be entitled to the benefit of their judgments, according to the ordinary course of law. They may, therefore, levy on land, in satisfaction of their executions." Further on in the same opinion it is said: "If they may thus acquire a title, it would be exceedingly absurd to say that they might not maintain an action for possession, or that they could not convey the title thus acquired." Cooley Const. Lim. (5th ed.) 152. It has indeed been expressly decided by this court that a foreign corporation may maintain an action for possession of real estate. *Smith* v. *Little,* 67 Ind. 549.

We know, as matter of general history, that for many years foreign corporations have loaned money on mortgage security, and that there is no decision questioning their right to buy land at sales on decrees in their favor. We know, also, that their right to make such loans has been expressly recognized. *Pancoast* v. *Travellers Ins. Co.,* 79 Ind. 172. . We know, too, that the Legislature has tacitly, if not expressly, recognized this general right by enacting laws restricting and limiting it. If there is no such general right, then, for a long series of years the Legislature has been paying deference to a mere shadow. If there is no such right, then a vain and idle

course has been pursued in adopting statutes limiting and restricting an imaginary general right. If there is no such right, the Legislature has been fighting a phantom. But there is such a right, and the Legislature has not been doing a vain thing in attempting to hedge it about by restrictions and limitations.

The question we next encounter may be thus stated : Is a title to land acquired by a foreign corporation under a sale made December 24th, 1879, on a decree rendered in its favor by the Circuit Court of the United States on the 2d day of July, 1879, in a suit on a mortgage executed long prior to 1879, commenced in February of that year, made void by the fact that in June, 1879, the corporation sued in that court on a mortgage executed by a person having no connection whatever with the person who executed the mortgage sued on in the first named suit?

Two facts are embraced in our statement of the question which should be kept prominently in view, namely, that the mortgage on which the suit first mentioned was based was executed prior to 1879, and that suit was pending in the Federal court in February of that year. Both of these facts existed prior to the passage of the act of 1879, of which we are to presently speak. The question, then, is not as to the effect of that act upon rights acquired subsequent to its passage, but upon rights acquired prior to its enactment. The execution of the mortgage and the institution of the suit unquestionably gave the corporation substantial rights. But there is still another right which requires consideration, and that is, the right of the Federal court to proceed in the suit over which it had undeniably acquired ample jurisdiction. The question of the validity of the act of 1879 necessarily involves the subordinate question of the right of the Legislature of this State to deprive a litigant lawfully in the United States court of a right to there prosecute his suit to final effect. But more than this is involved, for, bound up in the general question is that of the right of the Federal court to

pursue to the end a suit over which it has acquired plenary jurisdiction. A delicate question, therefore, faces us; for we must consider how far a State may impair rights acquired by suitors in a Federal court, and, also, to what extent, if at all, a State may impair the force of a decree rendered by that court in a suit pending at the time the statute was enacted. This case does not present the broad question of the power of the State to compel foreign corporations to refrain from suing our citizens in the United States courts, but presents the question of the power to compel a suitor whose suit is pending to discontinue proceedings, and presents, also, the question of the power of the State to control proceedings of the Federal court in a suit over which rightful jurisdiction had been assumed before the enactment of the statute.

We suppose that no one doubts that only Congress can control the jurisdiction and procedure of the Federal courts. A statute of the State which should assume to control the jurisdiction or procedure of the United States courts would, without doubt or hesitation, be pronounced void. If, therefore, the act of 1879 can be regarded as assuming to control the jurisdiction and procedure of those courts in suits pending at the time of its enactment, it must be declared to be without force. That act reads thus:

"SECTION 1. *Be it enacted by the General Assembly of the State of Indiana,* That every foreign corporation now doing, or transacting, or that shall hereafter do or transact any business in this State, or acquire any right, title, interest in, or lien upon real estate in this State, that shall transfer or cause to be transferred from any court of this State, to any court of the United States, save by regular course of appeal, after trial in the State courts, any action commenced by or against such corporation in any court of this State, by or against any citizen or resident thereof, or that shall commence in any court of the United States, in this State, on any contract made in this State, or liability accrued therein, any suit or action against any citizen or resident of the State of Indiana,

shall thereby forfeit all right and authority to do or transact business in this State, or hold real property or liens thereon, and all contracts between such corporations and citizens, or residents of this State, made after the passage of this act, shall be rendered void, as in favor of such corporation, but enforceable by such citizen at his election.

"Sec. 2. The provisions of this act shall be, and the same are hereby made conditions upon which such corporations may be authorized to do business in this State, or hold title to, or liens on real estate therein."

We are quite clear that this act can not have force in cases where, at the time of its enactment, the foreign corporation had a suit rightfully pending in the circuit court of the United States. To permit it to operate in such a case would be to permit a statute of the State to control the proceedings of the Federal court in a case in which jurisdiction had been rightfully acquired. Having acquired jurisdiction no statute of the State could divest it, nor could any statute make null the decrees of the court by denouncing a penalty against the suitor in whose favor it was rendered. If the statute is not operative, then the litigant is entitled to proceed as if there were no statute at all, so that the decision of the invalidity of the statute decides, necessarily, the question we last stated as the one for discussion.

Corporations are entitled to sue in the United States courts upon the same terms as individuals, and to this extent they are recognized as having substantially the same rights as citizens. In the case of *Bank* v. *Deveaux*, 5 Cranch, 61, it was held that a corporation was not a citizen within the meaning of the Constitution, but it was also held that it might, upon the same terms as a natural person, sue in the Federal courts. Chief Justice Marshall said in the course of his opinion: "Repeatedly has this court decided causes between a corporation and an individual, without feeling a doubt respecting its jurisdiction." A long line of decisions firmly maintains the proposition stated by us. *Muller* v. *Dows*, 94

U. S. 444; *Railway Co.* v. *Whitton*, 13 Wal. 270; *Louisville, etc., R. R. Co.* v. *Letson*, 2 How. 497; *Marshall* v. *Baltimore, etc., R. R. Co.*, 16 How. 314; *Covington Drawbridge Co.* v. *Shepherd*, 20 How. 227; *Ohio, etc., R. R. Co.* v. *Wheeler*, 1 Black, 286; *Insurance Co.* v. *Francis*, 11 Wal. 210. In *Louisville, etc., R. R. Co.* v. *Letson, supra*, it was said: "But there is a broader ground upon which we desire to be understood, upon which we altogether rest our present judgment, although it might be maintained upon the narrower ground already suggested. It is, that a corporation created by and doing business in a particular State, is to be deemed to all intents and purposes as a person, although an artificial person, an inhabitant of the same State, for the purposes of its incorporation, capable of being treated as a citizen of that State, as much as a natural person. Like a citizen it makes contracts, and though in regard to what it may do in some particulars it differs from a natural person, and in this especially, the manner in which it can sue and be sued, it is substantially, within the meaning of the law, a citizen of the State which created it, and where its business is done, for all the purposes of suing and being sued." It is apparent from the decisions to which we have referred that it is doubtful whether in any case the State can compel foreign corporations to refrain from suing in the United States courts, and it is quite clear that it can not wrest from one of those courts a suit in which jurisdiction had been acquired prior to the enactment·of the statute.

Our answer to the question stated is that·the title of the purchaser at the sale on the decree rendered by the United States Circuit Court was not made void by the commencement of the subsequent suit in that court.

The question which next demands consideration may be thus stated: Is one who brings a partition suit, holding, at the time, a deed from an assignee in bankruptcy conveying two-thirds of the land, and holding, also, a certificate issued upon a sale on a decree of foreclosure embracing all the land, estopped by a decree rendered in the partition suit, awarding

to him two-thirds of the land and to the defendant one-third, from asserting the title subsequently acquired by a deed executed pursuant to the certificate of sale.

The right conferred on the holder of the certificate of sale was not a title to the land; it merely invested him with a lien on the land, which might ripen into a title by the failure of the debtors to redeem the land within the time prescribed by law. *State, ex rel.*, v. *Sherill*, 34 Ind. 57; *Davis* v. *Langsdale*, 41 Ind. 399; *Hasselman* v. *Lowe*, 70 Ind. 414; *Felton* v. *Smith*, 84 Ind. 485; *Wilhite* v. *Hamrick*, 92 Ind. 594. When the partition suit was commenced, the plaintiff in that suit was not the owner of all the land, but was the owner of two-thirds, which was properly set off to him. The title which he acquired to all the land was a subsequent one.

It is settled that a decree in partition operates only upon the title held at the time the suit was instituted, and has, ordinarily, no effect upon a title subsequently acquired. *Miller* v. *Noble*, 86 Ind. 527; *Crane* v. *Kimmer*, 77 Ind. 215; *Avery* v. *Akins*, 74 Ind. 283, see page 290; *Arnold* v. *Butterbaugh*, 92 Ind. 403.

A decree in partition does not create title; it merely severs possession and awards to each tenant his share in severalty. *Kenney* v. *Phillipy*, 91 Ind. 511; *Miller* v. *Noble, supra;* *Utterback* v. *Terhune*, 75 Ind. 363; *Teter* v. *Clayton*, 71 Ind. 237; *Avery* v. *Akins, supra.*

It results from these settled rules that the decree in partition does not estop the appellant from asserting the title acquired under the deed issued on the decree of foreclosure.

The title which a plaintiff is ordinarily required to set forth in the complaint in partition is such as will enable him to secure the decree of partition demanded in his complaint. It is not incumbent upon him to make an issue settling all questions of title, or all rights of lien holders, although it is proper for him to do so. If the appellees had desired to settle all questions in the partition suit, they might, doubtless, have done so, by tendering proper issues; but they chose

to go to trial on the single question of the right of Elston to a decree of partition, awarding him two-thirds of the land, and tendered no issue as to his rights as the holder of the certificate, issued upon the sale made on the decree of foreclosure. Nothing more was embraced in the issues in the partition suit than Elston's right to the two-thirds of the land, and this was all that was adjudicated. It was, indeed, all that could have been properly adjudicated under the issues, for only a claim to two-thirds of the land was then asserted.

The application of these legal principles secures a just result in the present instance. Mrs. Piggott had joined her husband in executing the mortgage sued on in the United States court, was a party to the suit to foreclose that mortgage, and was, of course, chargeable with knowledge that the decree covered all the land, that it was unsatisfied when the partition suit was brought, and that the time for redemption had not then expired. She could not, therefore, have any reason for inferring that Elston was asserting a title founded on the decree, since that would have been a title to the whole, and not merely two-thirds, of the land. She had full knowledge of the extent of the title he asserted, and must have known that it embraced only her husband's interest, and was founded on the sale made by the assignee of her husband, under the order of the Federal court in the bankruptcy proceedings.

The question which is next encountered may be thus stated: Does the fact that the appellant, at the time he acquired the certificate of sale issued on the decree of foreclosure rendered on the mortgage executed by Albert Piggott, the husband, and Martha J. Piggott, the wife, held a conveyance for two-thirds of the land from the assignee in bankruptcy of Albert, the husband, executed after the sale on the decree, preclude him, the appellant, from asserting against Martha J., the wife, the title founded on the deed executed upon the foreclosure sale?

Appellee's counsel contend that the appellant is precluded from asserting title under the foreclosure sale, because he was,

as they affirm, a tenant in common with Martha J. Piggott, and could not, therefore, buy in an outstanding lien and build. a title on it. The general rule unquestionably is, that one tenant in common can not, by purchasing an outstanding lien, acquire a title which will evict his co-tenant. This rule, however, is subject to many exceptions and obtains only where the relation of tenants in common exists in strictness, and where the relation is such as to require mutual trust and confidence. It is impossible to perceive how one who buys at a sale made by an assignee in bankruptcy of the husband's interest becomes charged in such a case as that embraced in our general question, with duties of trust and confidence to the wife of the bankrupt. The title is not a common one; the interests are not reciprocal, and there is no fiduciary relationship created. The title is secured by virtue of a judicial sale, and not by the same instrument, nor from the same source, as that from which the wife's claim is derived. There is, we repeat, nothing in such a case to create relations of trust and confidence, and, therefore, the reason of the rule applicable to ordinary cases fails, and the time-honored doctrine is, that where the reason of the rule ceases so does the rule itself. An examination of the cases will show that we are right in stating that the reason of the rule is that the relationship is one imposing trust and confidence and requiring the tenants not to assume positions of hostility. Mr. Freeman says:

" If their interests accrue at different times, and under different instruments, and neither has superior means of information respecting the state of the title, then either, unless he employs his cotenancy to secure an advantage, may acquire and assert a superior outstanding title, especially where the cotenants are not in joint possession of the premises." Freeman Cotenancy & Part., section 155; *Roberts* v. *Thorn,* 25 Texas, 728; *Rippetoe* v. *Dwyer,* 49 Texas, 498; *King* v. *Rowan,* 10 Heiskell, 675; *Matthews* v. *Bliss,* 22 Pick.48; *Frentz* v. *Klotsch,* 28 Wis. 312; *Reinboth* v. *Zerbe, etc., Co.,* 29 Pa. St. 139; *Brittin* v. *Handy,* 20 Ark. 381.

It is not to be forgotten that the wife was bound both by the decree and the mortgage, and the case is, therefore, altogether different from one where the lien is created by the act of the law, as for taxes, or where the encumbrance was created by a former owner through whom both parties claim title. In such cases the burden is a common one. In the present case the burden rests alone on one of the tenants. This is so by virtue of her own act creating it, and by force of the decree directing the execution of the lien by sale of the property. Here, then, we find an essential element not found in cases to which the general rule is ordinarily applied.

The wife, as against the mortgagee, owned a mere equity of redemption. *Kissel* v. *Eaton*, 64 Ind. 248; *Haggerty* v. *Byrne*, 75 Ind. 499; *Eiceman* v. *Finch*, 79 Ind. 511; *Baker* v. *McCune*, 82 Ind. 585; *Vermillion* v. *Nelson*, 87 Ind. 194. This equity of redemption had been barred by the decree of foreclosure, so that nothing remained except the statutory right of redemption. *Eiceman* v. *Finch, supra*. This right was one to be exercised pursuant to law, and the failure to exercise it made the title absolute upon the execution of the sheriff's deed. Something more than a mere mortgage lien was, therefore, bought by the appellant, and he did not buy it by virtue of his position as a cotenant, nor did his cotenancy give him superior means of knowledge. No one could have had greater knowledge than Mrs. Piggott, by whom the mortgage was executed, and against whom the decree of foreclosure was rendered. Here, again, emerges an element pushing the case outside of the general rule.

There was, as already intimated, no obligation resting on the appellant to discharge the lien, for that obligation rested on the mortgagors. This obligation did not arise from the relationship of the parties, because the burden was not a common one, nor was there trust or confidence. There was, therefore, nothing which, in law or equity, imposed a duty on the appellant to pay off the mortgage and then sue for contribution. As no duty rested on him, and as he did not

avail himself of knowledge or opportunity supplied by his cotenancy, he was as free to buy as anybody else. The failure to redeem ensured the loss of the property to Mrs. Piggott, and whether the judgment plaintiff or his assignee, the appellant, gets the title, can really make no difference to her, for the loss is in either case precisely the same. Her opportunities for knowledge and for action were just the same against the appellant as against his assignor; she had just as much right to redeem from the one as from the other.

We are well satisfied that this case is not within the general rule forbidding one tenant in common from buying an outstanding lien and building title upon it, and that the case assumed in our question is the one made by the record.

Still another question requires discussion, and that takes this form: Was the appellant, having purchased the certificate issued on the decree of foreclosure after he had received the conveyance from the assignee in bankruptcy, bound to call upon Mrs. Piggott to redeem before instituting this action for possession of the entire land? It is assumed that the case is the ordinary one of tenants in common, and that, therefore, the suit should be for contribution, but what we have said proves the fallacy of this assumption. It is further argued that equity requires that the appellee Martha J. Piggott should have had an opportunity to redeem. This argument can not prevail. The deed made to the appellant gave him legal title, and if Mrs. Piggott be conceded a right to redeem, she should show affirmatively an offer to pay the sum necessary to redeem. It can not be doubted that the deed on the decree entitled the appellant, *prima facie* at least, to the rights of owner, and if Mrs. Piggott asks the interposition of equity she must show an offer to redeem. This is required by the familiar rule that he who asks equity must do equity. It follows, that even upon the concession that Mrs. Piggott had a right to redeem, she, and not the appellant, must move in that direction. He has at least a *prima facie* right, and, granting that it is only *prima facie*, still Mrs. Pig-

Elston *v.* Piggott *et al.*

gott must do equity, and this imposes upon her the duty of showing her readiness and ability to do what equity requires. It was not a mere mortgage lien which appellant bought, for a decree had barred the equity of redemption and had completely put an end to the right created in favor of mortgagors by the courts of chancery. There was, it is true, a statutory right, but this right, if not exercised according to law, could not be exercised at all, and the failure to exercise it divested all title. The law gave an opportunity to redeem, and we do not think one acting in good faith, and taking no advantage of position or relationship, was bound to offer a new opportunity. The deed executed on the decree conveyed title, and if this title could be defeated in any event, it could only be in a case where there was an offer to do equity. Ordinarily, one who shows a valid judgment, execution, sale, and deed, makes out a case for possession, and we do not see anything in the mere position of the parties, as indicated by our question and shown by the record, taking this case out of this general rule. It is important to keep in mind that Mrs. Piggott had, when the certificate was issued, nothing more than a statutory right of redemption, and we can not conceive how this right grew into larger proportions by the purchase of the appellant from the assignee in bankruptcy. His purchase did not enlarge her rights, for unquestionably he was at full liberty to buy at a judicial sale. Nor is there any reason why he can not use the decree which he bought against all whose rights and equities are concluded by it. It is manifest, therefore, that if there be any right at all in Mrs. Piggott, it is nothing more than a right to redeem. We can not imagine how a right can grow into enlarged proportions against one who does nothing more than he might lawfully do, and surely the appellant had a right to buy from the assignee and from the holder of the certificate of sale. If we should go no further, we should be compelled to answer the question last stated against the appellees.

We can see nothing in the position occupied by Elston pre-

venting him from buying the certificate from the purchaser at the sale on the decree of foreclosure, and if he had a right to buy he certainly had a right to acquire title. It would be a perversion of law to declare a man not entitled to the benefit of a purchase which he has a full legal right to make. There was no uncertainty as to the existence and validity of the mortgage; a judgment after "a day in court" settled this question; nothing more remained for adjudication; nor was it possible to acquire an undue advantage, for all rights and equities were settled by the decree, and there remained the bare statutory right of redemption, and nothing more. We are not without authority upon this question. In *Gunter* v. *Laffan*, 7 Cal. 588, it was decided that one tenant in common might buy at an execution sale, and it was said : "Even if they were tenants in common, or partners, there is no rule of law which would forbid one partner or tenant in common from purchasing at a judicial sale, particularly under a judgment not obtained by him. There was nothing in the former relations of the parties which gave Laffan an unfair advantage, or the means of information superior to others, so as to enable him to sacrifice the rights of Gunter. The sale was of a certain interest in property, not of a share in rents and profits due. The deeds by which that interest was held were of record, and the title open and notorious. Any one desirous of purchasing, could have ascertained the value of the interest as easily as Laffan." A like ruling was made in *Brittin* v. *Handy*, 20 Ark. 381. Mr. Freeman says: "A cotenant may lawfully bid at a sale of the interest of a cotenant, or of the whole subject-matter of the cotenancy." Freeman Ex., section 292; Freeman Cotenancy and Partition, section 165. The relation existing between partners is closer and more confidential than that existing between tenants in common, and yet there seems to be no doubt that one partner may buy at a sale on an execution issued against a copartner. An English writer thus states the rule: "Upon a sale by the sheriff of the interest of one partner, there is nothing to

prevent a purchase of that interest by his copartners." 2 Lindley Partnership, 691. The same doctrine is asserted in American text-books. Herman Ex., section 358; Freeman Ex., section 292.

Our conclusion on this branch of the case is that the appellant had a right to buy the certificate of the plaintiff in the foreclosure suit, and to take title under it without calling upon Mrs. Piggott to redeem.

One question remains: Was it the duty of Elston, the appellant, to make a demand for possession prior to instituting this action? We find no difficulty in answering this question in the negative. He had a right to buy, and, having a right to buy, he acquired the position of the execution plaintiff, and an execution plaintiff may maintain ejectment without demanding possession. *Smith* v. *Allen*, 1 Blackf. 22.

Judgment reversed, with instructions to set aside the conclusions of law stated, and to state conclusions of law upon the facts found in favor of appellant, and render judgment thereon in his favor.

Filed Mar. 4, 1884.