Price, J.
It is said in the opening of the brief for plaintiffs in error, that this proceeding involves two-questions of law:
‘ ‘ 1. Whether the appeal from the probate court to-the court of common pleas was duly taken.
“2. Whether the legacies are taxable.”
1. The right to appeal in cases like the present, is conferred by section 2731-13, Bevised Statutes, which is: ‘ ‘ The court of probate, having either principal or auxiliary jurisdiction of the settlement of' the estate of the decedent, shall have jurisdiction to hear and determine all questions in relation to said’ tax that may arise, affecting any devise, legacy or inheritance under this act, subject to appeal as in other cases, and the prosecuting attorney shall represent, the interests of the state in any such proceedings. ’ ’
■ It is claimed for plaintiffs in error, that the words subject to appeal as in other cases, mean that the remedy of appeal must be exercised according to the general rule provided for appeal from the probate to the court of common pleas, which is found in section 6408, Bevised Statutes. That section provides in substance, that the person desiring to take an appeal, shall, within twenty days after the making of the order, decision or decree from which he desires to appeal, give a written undertaking * * * to the *73 adverse party, with one or more sufficient sureties, to ■ be approved by the probate judge, and conditioned, etc., etc.
But when the person appealing * * * is a. party in a fiduciary capacity in which he has given bond within this state, and he appeals in the interest of the trust, he shall not be required to give bond, but shall be allowed the appeal, by giving written, notice to the court of his intention to appeal within the time limited for giving bond.
It is conceded in this ease that no bond was given,, by either the state or by the prosecuting attorney in. behalf of the state; and it is manifest on the record that the only notice of appeal was given by journal entry as follows: “The prosecuting attorney gives-notice of appeal from so much of said order as finds-that an inheritance tax is not payable upon the-legacies to the following legatees, viz.: American Bible Society, ’ ’ et al., naming each of the other religious societies and boards, receiving legacies.
But is the mode of appeal governed by section. 6408, Revised Statutes ? In such a proceeding 'before the probate court, it cannot be correctly stated that either the state or the prosecuting attorney acts in a fiduciary capacity. On the contrary the-state is a sovereign and such is its relation to the controversy. It is provided in section 213, Revised Statutes: “No undertaking or security is required on behalf of the state or of any officer thereof in the prosecution or defense of any action, writ, or proceeding; nor is it necessary to verify the pleadings-on the part of the state or any officer thereof in any such action, writ, or proceeding. ’ ’
It is under this section, that the state or its officer is relieved from giving bond for an appeal, and not *74 under section 6408, supra. And the state or the prosecuting attorney, not sustaining a fiduciary relation to the proceeding, the notice of appeal in behalf of the state need not be in writing as provided in the latter section; for it is only where that relation exists, that such written notice is required under its provisions.
We are of opinion that section 6411, of the same chapter and title furnishes the guide in this case. “The provisions of law governing civil proceedings in the court of common pleas shall, so far as applicable, govern like proceedings in the probate court, when there is no provision on the subject in this title.”
We* have seen that the other provisions of the title do not apply to this class of proceedings.
We therefore look to the manner of appeal from the court of common pleas as found in section 5227, Revised Statutes, which is: “A party desiring to appeal his cause to the circuit court, shall, within three days after the judgment or order is entered, enter on the records notice of such intention * * *. ” This was the law at the time of the appeal in this case.
Notice of intention to appeal was entered on the records of the probate court in conformity with the above rule, and we think it is sufficient.
The appeal was properly sustained.
2. Whether the legacies are subject to the collateral inheritance tax, depends on the construction of section 2731-1, Revised Statutes. The statute in its present form was enacted April 6, 1900. See 94 O. L., 101.
This act provides in part: “That all property within the jurisdiction of this state, and any interests *75 therein, whether belonging to inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the intestate laws of this state, or by deed, grant, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor, to any person in trust or otherwise, other than to or for the use of the father, mother, husband, wife, brother, sister, niece, nephew, lineal descendant, adopted child, * * * or the lineal descendants of any adopted child, the wife or widow of a son, the husband of the daughter ■of a decedent, shall be liable to a tax of five per centum of its value, above the sum of two hundred ■dollars, seventy-five per centum of such tax to be for the use of the state, and twenty-five per centum for the use of the county wherein the same is collected * * *.
“But the provisions-of this act shall not apply to property, or interests in property, transmitted to the ■state of Ohio under the intestate laws of this state, or ■embraced in any bequest, devise, transfer or conveyance to, or for the use of the state of Ohio, or to or for the use of any municipal corporation or ■other political subdivision of said state for exclusively public purposes, or public institutions of learning, or to or for the use of any institution in said state for purposes of purely public charity, or other ■exclusively public purposes; and the property, or interests in property so transmitted or embraced in any such devise, bequest, transfer or conveyance is hereby declared to be exempt from all inheritance .and other taxes, while used exclusively for any of said purposes.”
The words in the exemption clause, “to or for the use of any institution in said state for purposes of *76 purely public chanty or other exclusively public purposes,” are the subject of the present controversy.
The first lines of the act are comprehensive and would embrace the legacies named and subject them, to the inheritance tax, unless they are saved by the above exemption clause. Therefore counsel have discussed, and we are called upon to consider, the scope of the language quoted when applied to the facts of the present case. What are the material facts ?
It is shown by the record that all the legatee societies and boards who are plaintiffs in error, save the-Woman’s Home Missionary Society, are incorporated in states other than Ohio, and while they are not organizations for profit, but for the purpose of advancing the cause of religion and dispensing charity, they are, nevertheless, foreign corporations. Some-were chartered under the laws of New York, and others under the laws of Pennsylvania.
The Woman’s Home Missionary Society, is an auxiliary to the Board of Home Missions, and the-Woman’s Foreign Missionary Society is auxiliary to-the Board of Foreign Missions. The parent of all these societies and boards seems to be The General Assembly of the Presbyterian Church in America, incorporated in another state, which is the central and supreme authority, and where the subordinate societies and -boards became incorporated, it was done under the direction of the General Assembly.
The American Tract Society has colporteurs in almost, if not all the states of the Union, and other agencies for the distribution of religious literature. The aim of the American Bible Society is the distribution of the Holy Scriptures, translated 'into-numerous languages, among the people generally,. *77 .and especially among the destitute and needy classes. While foreign corporations, or auxiliaries thereto, it is true that the work laid out for each board and society, is carried on in all the states through local and "subordinate agencies, and it may be admitted that theirs are works of charity in the broad sense, that the up-lifting of men, women and children to the standard of life taught in the Scriptures is indeed a work of charity, the greatest of the three Christian .graces. The funds to carry forward these religious enterprises, under the various names and organizations, are raised by church and other collections and largely aided by devises and legacies.
The testatrix, Isabella Brown, no doubt was a devout member of the Presbyterian church, and of her. bounty she liberally gave to these several societies .and boards, believing they could best employ her gifts in advancing the cause of the church of her choice.
The work of the Board of Missions for Freedmen lies mostly in our southern states. But it must be stated as a fact appearing in the record, that while legatees who are plaintiffs in error, through auxiliary and subordinate agencies, are diligent in every state of the Union, the higher authority to which they must account, resides beyond the jurisdiction of this state, and hence the question recurs, are they “mstitutions in this state for purposes of purely public-charity, or other exclusively public purposes?”
We are urged to conclude, that because the work of these societies and boards is in progress, in greater or less degree, and their influence felt in this state through the various subordinate agencies employed, the institutions themselves are in this state within the meaning of the statute. If this is true of Ohio, *78 it is true of every other state, and we have these institutions, not only in the state where they are chartered, but omnipresent and in all the states. In other words, they would, as institutions exist in any state where any of their charitable or religious enterprises are projected and carried on, no matter in what degree. Such a construction of the facts and the law we think is not permissible, if the statute is valid, of which we shall speak later in this opinion.
It seems to be true that some of these societies and boards have an office in Ohio in charge of a representative, the better to conduct the affairs of that church agency. So also have railway, insurance, telegraph, telephone, and other foreign corporations; but that is to further their business enterprises. Such companies are not “institutions in this state,” because they have traffic «and conduct business here. They are still corporations and institutions of the state where chartered and organized.
Learned counsel for plaintiff in error ask in their brief, “Where are these institutions if not in Ohio? Where were the institutions before charters were granted? for they were in existence long prior to the dates of the charters.”
It is perhaps true, that these institutions now operating under charters, may have had another form of existence prior to the date of the charters, but in the wisdom of the General Assembly of the church, it was decided to organize them under charters and it selected the state under whose laws it should be done. It is not a new proposition, that the home of the corporation is the state of its incorporation, and when so incorporated under the laws of a. state selected for that purpose, it has also selected its abiding place, and no longer can be recognized as *79 homeless, or as abiding in every state where they have agencies carrying forward their work of benevolence and charity. We think this view is abundantly supported by the authorities.
The will of Mrs. Brown, who was a resident of Cincinnati, gave no directions to her executor or her legatees as to the place where the money should be expended, nor does it undertake to control the time or place of the expenditure. Once in the possession of these institutions, it may be disbursed as they deem proper, and all of it may be disbursed in communities beyond our borders. So we do not find that we are adopting a narrow construction of our statute, if it appears that it undertakes to tax the right of the foreign, though charitable institutions, to receive and so absolutely control the disposition of property owned by the testatrix in this state. We think these legatees are not “institutions in this state” within the meaning of the statute.
The doctrine we maintain is happily expressed by Justice Field in Paul v. Virginia, 8 Wallace, 181, as follows: “Now a grant of corporate existence is a grant of special privileges to the corporators, enabling them to act for certain designated purposes as a single individual, and exempting them (unless otherwise specially provided) from individual liability. The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in Bank of Augusta v. Earle, ‘It must dwell in the place of its creation and cannot migrate to another sovereignty.’ The recognition of its existence even in other states, and the enforcement of its contracts made therein, depend purely upon the comity of those states — a comity which is never ex *80 tended where the existence of the corporation or the •exercise of its powers are prejudicial to their interests or repugnant to their policy * * *. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with its citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion.” Again, in speaking of the assent of the other states to transact business within their borders, the learned Justice adds, “that such assent may be granted upon such terms and conditions as those states may think proper to impose. ’ ’
We have from this high authority, a definition of the situs of corporations and their relation to states other than where chartered; and we find no distinction in this respect, between business corporations and those not for profit, or, for religious or •charitable purposes.
Quotation from other authorities, we think superfluous, and it seems clear, that these charitable and religious institutions being corporations foreign to this state, are not “institutions in this state,” and are therefore not within the exemption provided in the inheritance statutes.
Applying the doctrine in a practical manner, we have numerous decisions, many of which are cited in the brief for defendants in error. We will occupy space in citing and discussing but few of them, and ■only such as may serve as fairly representative of the many others.
In People v. The Seaman’s Friend Society, 87 Ill., 246, it appears that the Society was incorporated under the laws of Ohio. It had a building in Chicago *81 in charge of a superintendent, where seamen, dock-men, were solicited to meet for religious and moral instruction, and lodging was provided for needy ■cases. The object of the society, as declared in the act of incorporation, is “for disseminating moral and religious instruction, and other charities, among sailórs, and laborers doing business on our western ■waters.” This institution resisted the collection of a tax on the Chicago premises, on the ground that being a place where charity is dispensed, it was exempt. The court, on page 249, say: “But if a broader construction could be given to the statute, and it could be held to embrace all institutions that dispense charity, whether public or private, and the property used exclusively for that purpose, there is still a valid reason why the property in this case is not exempt from its just proportion of taxation. The statute must, in any event, be understood to have exclusive reference to institutions or corporations created by the laws of this state, and not to foreign corporations that may choose to locate branches in this state. It is only by the comity that exists between states that foreign corporations are permitted to transact in this state the business for which they were created. The general assembly has manifested no intention to relieve the property situated in this state, belonging to such corporations, no matter what their objects may be, whether charitable or otherwise, from the burdens of taxation.”
We further illustrate the application of the statute by reference to another leading case, decided by -the Court of Appeals of New York: Matter of Estate of Prime, deceased, 136 N. Y., 347.
Prime, a resident of that state, died in the city ■of New York on April 7, 1891, leaving a will dis *82 posing of real and personal property. He gave legacies to collateral relatives and also to two foreign corporations — The American Board of Commissioners for Foreign Missions and the Presbyterian Board of Belief for Disabled Ministers. The taxing authorities exacted a collateral inheritance tax on the legacies to those corporations, as well as on the legacies to the collateral heirs. These legatees appealed and the controversy finally reached the court of appeals. Other questions were in' the case, as to the condition of the statutes of that state upon the subject, which are not relevant here and they a're omitted. We quote from the able opinion of Andrews, C. J., as follows:
“The claim that the test of liability of foreign corporations to a legacy tax is the liability of a domestic corporation of the same character to the payment of such tax, and that if one is exempt, the other is exempt also, has, we think, no foundation.. In both cases, the question is the same; has the statute made the legacy taxable? * * * The argument that gifts for the promotion of charity, education and religion should be encouraged and should, not be diminished by exactions of the state, presents-a moral and political rather than a judicial question.. It is the duty of courts in the interpretation of statutes, to declare the law as it is, and the interests of society are best subserved by a close adherence by courts to what they find to be their plain meaning, neither narrowing the application on one hand, nor extending the meaning on the other, to meet a case not specified, which may be within the reason of the-law.' # * * It is the policy of society to encourage benevolence and charity. But it is not the proper function of a state to go outside its own *83 limits and devote its resources to support the cause of religion, education or missions for the benefit of mankind at large. ’ ’
The opinion from which the above is quoted was unanimous.
The same court had before it another inheritance tax case which is found in Matter of Balleis, 144 N. Y., 132, where the Prime case was considered and its principles unanimously approved. It was held that, “a statute of a state granting powers and privileges to corporations must, in the absence of plain indications to the contrary, be held to apply only to corporations created by the state and over which it has the power of visitation and control. The legislature in such cases is dealing with its own creations, whose rights and obligations it may limit, define and control. ”
The Prime case was considered as a valuable authority in United States v. Perkins, 163 U. S., 625, and it is quoted from, as we have done, with approval, and adds, as found on page 629: “Such a tax (inheritance tax) was also held by this court to be free from any constitutional objection in Mager v. Grima, 8 How., 490-93, Mr. Justice Taney remarking that ‘the law in question is nothing more than an exercise of the power which every state and sovereignty possesses, of regulating the manner and terms within which property, real and personal, within its dominion may be transferred by last will and testament, or by inheritance ,* and of prescribing who shall and who shall not be capable of taking it. * * * If a state may deny the privilege altogether, it follows that when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy.’ We think *84 that it follows from this that the act in question is not open to the objection that it is an attempt to tax the property of the United States (a legatee of personal property), since the tax is imposed upon the legacy before it reaches the hands of the government. The legacy becomes the property of the United States only after it has suffered a diminution to the amount of the tax, and is only upon this condition that the legislature assents to a bequest of it.”
The same doctrine is found in Eidman v. Martinez, 184 U. S., 578; Horn Silver Mining Co. v. New York, 143 U. S., 305.
From the foregoing cases, we see that the exemptions of charitable institutions, would relate only to domestic institutions of that class, even if the words “in the state” had been omitted from the statute. It is not a tax upon property, but upon the right to receive property and have it transferred. Our statute does not impose the tax upon the property directly, because it provides that “all administrators, executors and trustees * * * shall be liable for all such taxes, with lawful interest, as hereinafter provided * * *.”
However, it is argued that our construction of the statute, places it in conflict with section 2 of our bill of rights; and also in conflict with the fourteenth amendment to the constitution of the United States. .We will consider these guarantees together.
That part of section 2 of our bill of rights which is germane to the argument is, “ * * * # and no special privileges, or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly.” ' That portion of the so-called fourteenth amendment to the constitution of the United States, which is pertinent now, is:
*85 “No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * * * nor deny to any person the equal protection of the laws. ’ ’
Very much that we have already said and quoted, bears upon the interposition of these provisions, and we still fail to see how the statute under consideration discriminates against the institutions complaining here.
Section 2 of the bill of rights interdicts the conferring special privileges and immunities beyond the power of the general assembly to alter, revoke, or repeal. There is nothing occult or mysterious about this language in our declaration of fundamental principles.
Our constitution was adopted by the people of Ohio as their charter of rights and restraints, and it is not charged with the care of non-resident persons or corporations; and the statute in question creates no privileges or immunities in favor of charitable institutions within the state, which the general assembly may not alter, revoke, or repeal; and surely it is competent for it to exempt the property of institutions, corporations, which it has created, which property is devoted to purely religious or charitable purposes. There are no Ohio institutions here complaining of any discrimination against them.
Nor do we see any help for plaintiff: in error, in the fourteenth amendment to our federal constitution. The statute we are considering, does not abridge the privileges or immunities of citizens of other states, nor does it deny to any person the equal protection of the laws.
Within the meaning of this clause a foreign corporation is not a citizen, and cannot invoke its prot'ec *86 tion. By judicial construction of the constitution of the United States and the Federal Judiciary Act, a corporation is a citizen for the purposes of federal jurisdiction, of the state by which its charter has been granted, and this without reference to the residence of the members or shareholders who compose the corporation. When a corporation chartered by or created under the laws of a foreign state is sued in a state court, it may remove the cause to the circuit court of the United States in like manner as a non-resident citizen may, without regard to residence of its members or shareholders. But it is a settled principle of constitutional law that a corporation is not a citizen within the meaning of that clause of the constitution of-the United States which declares that “the citizens of each state shall be entitled to all privileges and immunities of citizens of the several states.” 10 Cyc., 150; Ducat v. Chicago, 48 Ill., 172; Tatem v. Wright, 23 N. J. Law, 429; Ducat v. Chicago, 10 Wall., 410.
In Pembina Consolidated Silver Mining and Milling Co. v. Pennsylvania, 125 U. S., 181, the Supreme Court of the United States says in the syllabus:
“Corporations are not citizens within the meaning of the clause of the constitution declaring that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states: article 4, section 2, clause 1. A private corporation is included under the designation of ‘person’ in the fourteenth amendment to the constitution, section 1. The provisions in the fourteenth amendment to the constitution, section 1, ‘that no state shall deny to any person within its jurisdiction the equal protection of the laws,’ do not prohibit a state from re *87 quiring for the admission within its limits of a corporation of another state, such conditions as it chooses.”
This doctrine was fully reviewed and endorsed in Horn Silver Mining Co. v. New York State, 143 U. S., 305.
It seems unnecessary to cite other decisions by state courts, since the highest tribunal in the land has thus expounded these constitutional provisions.
There is another reason why the alleged discriminations against non-resident institutions is without foundation. The- legislature has the right, in laying taxes, to classify corporations, as has been done in this state in recent years and which has been upheld by this court as within the constitutional power of the general assembly. Railroad companies are reached by one mode of appraisal and assessment for taxes; telegraph, telephone, and express companies by other methods; and more private corporations by still another mode. No discriminations can be tolerated in favor of or against one of the corporations of the same class; but there is no' valid objection in the fact that one class is required to share in the common burden of taxation in a different way and even in a different degree, from those in other classes. Lee, Treas. v. Sturges, 46 Ohio St., 153; Hagerty v. The State ex rel., 55 Ohio St., 613.
If resident corporations, the creatures of our own laws, cannot justly complain of such classification, how can foreign corporations be heard to find fault, when they may be subjected to any reasonable condition for their admission to operate in this state, and *88 even may be excluded altogether, unless engaged in interstate commerce?
The judgment of the lower court is sound, and it is affirmed.

Judgment affirmed.

Spear, C. J., Davis, Shauck, Crew and Summers, JJ., concur.