VASQUEZ *et al.*, Plaintiffs in Error, v. EWING, Defendant in Error.

1. A certificate of confirmation, granted by Recorder Hunt under the act of May 26, 1824, though *prima facie* evidence of title under the act of Congress of June 13, 1812, as against the government and persons claiming by title subsequent to the said act of June 13, 1812, is not sufficient to establish title to land lying within the approved United States survey of St. Louis common as against one claiming title under the city of St. Louis; there must in such case be actual proof of inhabitation, cultivation and possession prior to the 20th of December, 1803.

2. Where one of several tenants in common is in possession of a tract of land, and a judgment for the possession of the tract is rendered against him in behalf of one claiming by title adverse to that of the co-tenants, and a writ for the delivery of possession is issued and placed in the hands of the proper officer; *held*, that this amounts to such an ouster as will terminate the co-tenancy in favor of the plaintiff in the execution, who, without an actual execution of the writ of possession, receives a deed from the defendant in the execution; he will not be estopped by accepting such a conveyance to deny the title of the co-tenants of his grantor; nor will the acceptance of such deed be such a recognition of a title, recited therein to have been acquired by the grantor, as will amount to an estoppel.

3. Where equitable relief is sought, the petition should be framed with a view to such relief.

### *Error to St. Louis Land Court.*

This was an action, in the nature of an action of ejectment, to recover possession of an undivided interest of thirteen thirtieths of a tract of land in St. Louis county. Plaintiffs claim title as the heirs and legal representatives of Benito Vasquez, to whose legal representatives they allege the said tract of four by eight arpens was confirmed by the act of Congress of June 13, 1812.

On the trial, plaintiffs introduced in evidence a certified copy of an extract from the list furnished by Recorder Hunt to the office of the surveyor general of Illinois and Missouri, pursuant to the act of Congress of May 26, 1824; which extract with the accompany certificates, is as follows:

Vasquez v. Ewing.

| No. 658. | 1825. Aug. 13. | Near town of St. Louis. | Bounded in part eastwardly by the commons, or vacant land, thence running back 8 arpens, so as to include the spring usually called Benito's spring. | Feet. | Arpens. 4 front. 8 deep. |
|---|---|---|---|---|---|

"Recorder's Office, St. Louis, October 15, 1827. I, Theodore Hunt, recorder of land titles in the state of Missouri, do certify the foregoing record, contained in 47 pages, commencing with Louis Lemond and ending with the field lot of Titus Strickland, contains all the village lots, out-lots and common field lots, the boundaries of which have been proven before me under the provisions of an act of Congress approved the 26th May, 1824, entitled 'An act supplementary to an act passed on the 13th day of June, 1812, entitled An act making further provision for settling the claims to land in the territory of Missouri.' Theodore Hunt."

"Office of the Surveyor General of Illinois and Misssouri. St. Louis, 27th March, 1854. The above abstract of a claim in the name of Benito Vasquez's legal representatives, numbered 658, in red, and the annexed certificate of Theodore Hunt, recorder of land titles, are correctly copied; the former from page 29, and the latter from pages 48 and 49 of list returned to this office by the said recorder, pursuant to the provision contained in the third section of the act of 26th May, 1824, referred to in the above certificate, which list is on file in this office. From a certain document returned to this office with the letter of the commissioner of the general land office, of the 12th February, 1847, to the surveyor general, it appears that the said number 658 (as above laid down in red) corresponds with the number 655 (in black) on a similar list on file in the said general land office. Jno. Loughborough, surveyor general."

Plaintiffs also introduced in evidence a certified copy of United States survey No. 2965. This was a survey for the legal

representatives of Benito Vasquez, of a tract of four by eight arpens, and embraced the land in controversy in the present suit; also introduced evidence tending to prove that plaintiffs were heirs and legal representatives of Benito Vasquez; that one Quinette, holding a portion of the Vasquez title, had been in possession of the said tract; that defendant Ewing, claiming by a title adverse to that of Vasquez' representatives, having obtained a judgment against said Quinette for the possession of said tract, and a writ of possession having issued and been placed in the hands of the sheriff, said Quinette executed a deed of conveyance of said tract to said Ewing, in which it is recited that the land conveyed is "the same which the said party of the first part acquired of the heirs and legal representatives of Benito Vasquez, by deed bearing date September 3, 1847," &c.

It was shown on behalf of defendant, Ewing, that the tract of land in controversy was embraced within the common of St. Louis as surveyed by the United States. It is unnecessary to set forth more fully the facts appearing in evidence. The court, upon motion of defendant, instructed the jury that plaintiffs were not entitled to recover. Exceptions were duly taken. Plaintiffs bring the cause to this court by writ of error.

*F. A. Dick*, for plaintiffs in error.

I. The title shown by the plaintiffs on the trial was a confirmation of the 13th June, 1812, founded upon inhabitation and cultivation of the lot in question, as an out-lot, prior to the 20th day of December, 1803, by their ancestor, upon which, as a matter of law, they were entitled to recover. (17 Mo. 322; 16 How. 466, 494; 15 Mo. 87; 9 Mo. 351, 489, 717; 19 Mo. 665; 4 Mo. 459; 5 Mo. 240; 6 Mo. 474; 11 Mo. 184.)

II. The evidence, relied upon by the defendant of title to the premises in dispute in the inhabitants of the town of St. Louis, as a part of its commons, did not, as a matter of law, show a title equal to and countervailing the plaintiffs' title. (4 How. 421; 18 Mo. 296-7, and authorities above cited.)

III. The court committed error in declaring, as a matter of

law, that the plaintiffs had not proved possession, inhabitation or cultivation of the premises prior to the 20th December, 1803. The instruction was in effect declaring to the jury that the plaintiffs' evidence was not entitled to any credit.

IV. Quinette, having been a tenant in common with the plaintiffs, was in possession of these premises with their permission and approbation, and holding for them as well as himse f. (2 Cruise, 402, sec. 14, 16; 3 Cruise, 437; 25 Maine, 435; 1 Pick. 116; 5 Wheat. 116.) The purchase of his title, and taking Quinette's possession of the premises upon such purchase by Ewing, put him in the same position, as to the plaintiffs, that Quinette was in, and, under these circumstances, he could not take advantage of the plaintiffs, who were cotenants with him of the Vasquez title, under which he obtained possession, by choosing to consider himself in possession under an adverse title. (6 Verm. 395; 3 J. R. 504; 5 Cow. 129, 130; 25 Wend. 389.)

V. The purchase by Ewing of Quinette's interest in this land, and the recitals in the deeds under which Ewing and Quinette held and obtained possession, amount to such a recognition of the Vasquez title as to estop Ewing from denying that there was such a title to this land, as it is set out in his deeds giving possession. (6 Verm. 395; 9 Wend. 209; 4 Denio, 485-6; 3 J. R. 504, 223; 5 Cow. 130, 129; 7 J. R. 157.)

VI. The deed of the city to Lane enured to the joint use of his tenants in common of the Vasquez title, he having an equitable claim upon them for their proportionate part of the compromise money—five dollars per arpent—paid by Lane to the city; and Lane and the defendant, who by the sheriff's deed is in privity of estate with him, will not be permitted to set the city title up adversely to the other owners. (3 Dana, 324.)

VII. The defendant can not in the same action claim both against and under the Vasquez title.

*H. S. Geyer*, for defendant in error.

The extract from the list furnished by Recorder Hunt to the surveyor general, and the official survey No. 2865, relied upon

by plaintiffs as proof of confirmation by the act of 13th June, 1812, do not furnish any evidence that the tract of land therein described was, prior to 20th December, 1803, a town lot, out-lot, or common field lot; and therefore neither is even *prima facie* evidence of a confirmation by the act of June, 1812. To establish a confirmation of a private claim by the first section of the act of 13th June, 1812, there must be proof in some form that the land claimed was a town or village lot, out-lot, or common field lot. (Newman v. Lawless, 6 Mo. 279.) What constitutes such a lot is a question of law to be determined by the court on the facts presented in each case. (Page v. Scheibel, 11 Mo. 167.) In the cases in which the certificate issued by the recorder or the list furnished by him by authority of the act of 26th May, 1824, has been held to be evidence of a confirmation, it appeared, by the description of the land or other competent evidence, that it was a town or village lot, out-lot or common field lot. (Janis v. Gurno, 4 Mo. 458; Gurno v. Janis, 6 Mo. 330; Beechler v. Coonce, 9 Mo. 447; McGill v. Sunners & McKee, 15 Mo. 80; Soulard v. Allen, 18 Mo. 590.) In this case, the land is described both in the certificate and survey as " a tract of land of four arpens front, eight arpens in depth, near the town of St. Louis;" a description which is neither of a town lot, out-lot or a common field lot; and as there is no other evidence that it is one of the description of lots confirmed by the act of 1812, the plaintiffs fail in establishing a confirmation by that act.

The evidence of confirmation, if any, afforded by the list furnished by the recorder to the surveyor, is rebutted in this case by the facts proved and admitted by the plaintiffs. The land in controversy being within the boundaries of the commons confirmed to the inhabitants by the first section of the act of 13th June, 1812, must be regarded *prima facie* as part of the commons, the title to which vested in the inhabitants of St. Louis at the date of the act, and could not be divested by subsequent act of Congress. The confirmatory act operates as a legislative grant to the inhabitants of St. Louis of all lands within the boundaries of the

commons, which was not on the 20th December, 1853, private property; it confirmed no private claims except to town lots, out-lots and common field lots held as private property prior to 20th December, 1803, and not abandoned. It is an exception out of the grant of commons to be proved by the private claimants. The act of May 26th, 1824, did not authorize the recorder, nor did he assume to decide the judicial question left open by the act of 1812—namely, whether the land in dispute was or was not a town or village lot, out-lot or common field lot. That remained a matter of law, to be determined by the courts, after as well as before the act of 1824. The recorder was authorized and directed to receive evidence of the inhabitation, cultivation and possession required by the act of 1812, and of the extent and boundaries of each claim; he was required to issue a certificate of confirmation for each claim confirmed; that is, he was to certify in writing the description of each lot, which, in his opinion, had been proved to have been inhabited, cultivated and possessed prior to the 20th December, 1803, and not abandoned; and such certificate is *prima facie* evidence of the facts, upon proof of which it was to be issued, and nothing more. At most, the certificate of confirmation, so called, and the list furnished the surveyor under the act of 1824, is evidence of a confirmation only as against the United States and those claiming under them by title subsequent to the act of 1812; but as against a confirmation by the act of 1812 the claimant is bound to prove the facts required by the act precisely as he would have been at any time between the 13th June, 1812, and 26th May, 1824. (Gurno v. Janis, 6 Mo. 330.)

SCOTT, Judge, delivered the opinion of the court.

1. The case of LeBois v. Bramell, (4 How. U. S. 449,) establishes the doctrine that the approved survey of the commons of a village, confirmed by the act of June 13, 1812, is equivalent to a patent. If this is so, then the city of St. Louis had as perfect a title from the general government to her commons

as could be obtained. That title being perfect, it could only be surmounted by the proof of facts which showed that she could not have had title. Her title could not be assailed by the government, nor any one claiming subsequently to her confirmation. By the act of 1812, if one could actually show that he inhabited, cultivated or possessed a lot, within its meaning, prior to the 20th December, 1803, within the boundary of the survey of the commons, he would have a better title than the city ; for, being a lot inhabited, cultivated or possessed, it could not have been commons. But the city having a perfect title against the government and against all the world except such a claimant, in order to dispossess her or those claiming under her, the fact of cultivation, inhabitation or possession prior to the 20th December, 1803, must be actually proved. *Prima facie* evidence of such fact is not ·sufficient. The city having a perfect title against all who do not show actual inhabitation, cultivation or possession, on what principle, in law or reason, can one, who has only *prima facie* evidence of one of these facts, overthrow her title ? Her perfect title is of no avail, if, when it is attacked, she has to disprove her assailant's title. As against the perfect title, nothing but an actual showing of the existence of the fact which will overcome it, can be deemed sufficient. The villages, whose commons were confirmed by the act of 1812, were not authorized to prove their claims before the recorder under the act of 1824. How unjust, then, to make the proof taken by an individual claimant of such effect as to throw the burden of disproving it on the villages. If the villages could have proved their claims, then they would have *prima facie* evidence against *prima facie*, and, being in possession, they could not be disturbed. By the act of 1812, the title of the villages to commons could only be overcome by actual proof of the inhabitation, cultivation or possession of part of them prior to the 20th December, 1803, by inhabitants of the villages, as a lot, out-lot, or common field lot. If it was competent to Congress to do so, we will not presume that they intended, by the act of 1824, to require evidence less strong

than the act of 1812 to overthrow the claims of the villages enumerated in the act to their commons.

We are not aware of any case in which the precise point involved in this controversy has arisen. The doctrine that the certificates and proofs taken before the recorder, under the act of 1824, were *prima facie* evidence, was not established without a struggle. Taken as it has been received, that the certificates were *prima facie* evidence against the government, there is not much to be said against it. Being evidence against the government, those claiming subsequently to the act of 1812 can not occupy a more advantageous position than the government itself maintained. But we can see no reason, nor perceive any principle, on which a certificate of the recorder should have a prevailing effect, unless disproved, against one claiming under the act of 1812, or any act prior thereto. Indeed, it would be against principle, as it would be assuming that Congress may pass a title, and then, by a subsequent act, require less evidence to defeat that title than was required when it was first conveyed. The certificate would prevail against one claiming under the act of 1812? who had none, and who could not prove inhabitation, cultivation or possession before the 20th December, 1803 ; because, in that case, there would on one side be no evidence of any fact which was requisite to confer title by the act of 1812.

2. It is maintained by the plaintiffs that Quinette, having been a tenant in common with them, and having been in possession of the premises in controversy, the defendant Ewing, succeeding to Quinette's possession by a deed from him, held likewise as a co-tenant, and was estopped from denying the right of his co-tenants, the plaintiffs, to the possession of the disputed lot. The facts preserved in the record do not sustain this point. It appears that Ewing sued Quinette to recover possession of the lot; that he obtained a judgment, and that a writ for the delivery of the possession was in the hands of the officer when Quinette conveyed to Ewing. This we consider

such an ouster as terminated the co-tenancy. An actual execution of the writ was not necessary to effect that object.

It is next insisted that the purchase by the defendant Ewing of Quinette's interest in this land, and the recitals in the deeds under which Ewing and Quinette held possession, amounted to such a recognition of the Vasquez title as estops Ewing from denying that there was such a title to this land. Inasmuch as Ewing claims by a distinct title, wholly disconnected with that of Vasquez, we hold that the doctrine of estoppel does not apply. There is nothing in the nature of an estoppel which precludes a party from setting up a title like that interposed by Ewing against the recovery of the plaintiffs. (Landes v. Perkins, 12 Mo. 259; Blight's Lessee v. Rochester, 7 Wheat. 635.)

3. The plaintiffs, moreover, contend that the deed of the city to Lane enured to the joint use of himself and his co-tenants, inasmuch as he compromised the Vasquez title with the city, and by means of it obtained the commons' title from her. Whatever equity there may be in the defendants, growing out of the compromise with the city, about which we express no opinion, it is evident that the petition filed in this cause is not so framed as to obtain any such relief. This action was brought to try the legal title of the parties; it is in the nature of an ejectment, and the allegations in the bill are only suited to that purpose. If the defendants have any equity, it must be sought in a proceeding so ordered as to show that they are entitled. Surely, the defendants could not expect that the court would hold that they were legally entitled to the right acquired from the city, when they had neither paid nor offered to pay any portion of the sum by means of which Lane obtained her title. Judge Ryland concurring, the judgment will be affirmed.