## FRENTZ vs. KLOTSCH.

TAX DEED. (1) *Recital as to place of sale.* (2) *Presumption from recital that grantee held the tax certificate as " assignee of the treasurer," etc.* (2) *Power of county to purchase at tax sale, and assign certificate.*

TENANTS IN COMMON. (3, 4) *When one tenant may claim under a tax deed as against his co-tenant.*

1. A tax deed under ch. 22, Laws of 1859, which states that the land was sold at a public auction at the county seat of the proper county (naming both), is not void because it does not further define the *place* of sale (as " at the court house," if that was the fact.)

2. Where the tax deed recites that the grantee held the tax certificate as " assignee of the treasurer " of said county, it must be presumed that the treasurer bid off the land for the county, as he was authorized to do.

3. Where one of two tenants in common stands in such confidential relations in regard to the other's interest, that it would be inequitable to permit him to acquire a title solely for his own benefit, and expel his co-tenant, he will be treated as a trustee as to his co-tenant's interest.

4. Where tenants in common derive title under different conveyances, or through different acts of the parties or of the law, and have not entered into any engagement or understanding with each other in regard to the common property, and neither is in actual possession, *quære*, whether one may not acquire title by a tax deed as against the other.

APPEAL from the Circuit Court for *Winnebago* County.

Ejectment, commenced in 1870, for the undivided half of a lot in the city of Oshkosh. Plaintiff showed title in fee to the lot in A. F. David and Henry A. Gallup, as tenants in common, and a conveyance to himself from David of an undivided half thereof. Defendant put in evidence, (1.) A tax deed dated May 15, 1866, from the state and county to S. B. and J. A. Paige, assignees of the treasurer of said county, upon the sale of 1863, for taxes due upon the whole lot for 1862. (2.) A warranty deed from the Paiges to defendant. As rebutting evidence, plaintiff introduced a succession of conveyances, in terms, of the whole lot, from said Henry A. Gallup to Mears, from Mears to Rollins, and from Rollins to said S. B. and J. A. Paige. Mears, as a witness for plaintiff, was asked: "At the time you conveyed to Rollins, who was the owner of the tax certificate upon which this tax deed was issued?" Objection overruled. Answer: "Well, I suppose I was." He then testified, in substance, that he gave it to Rollins, and that, a good while before this, he had bought it of one E. L. Runals; and upon cross-examination he testified, he thought (but could not be positive) that he gave, at the time, two or three tax certificates to Rollins; and that he was pretty positive that the one for the sale of 1863 was among them; that he could not tell what the amounts or dates of the others were, that his attention had only been called to the matter within half an hour, and that he had never thought anything about the matter before. This was all the material testimony. The court charged the jury to find a verdict for the plaintiff, in the usual form in ejectment. Defendant moved for a new trial, on the ground that the court admitted irrelevant testimony, and erred in its charge. Motion denied; and judgment upon the verdict; from which defendant appealed.

*Felker & Weisbrod*, for appellant:

1. The tax deed is good, under the repeated adjudications of this court. It recites that the Paiges are the assignees of the

treasurer; that the treasurer was purchaser (21 Wis., 173; id., 351; id., 530; 22 id., 430), and all other matters, material and immaterial, required by law. General Laws of 1859, ch. 22, sec. 50. The objection that the deed does not recite at what public place the lands were sold, is not well taken. Sec. 2 of ch. 22, Gen. Laws of 1859, requires the treasurer, in his notice of sale, to specify some public place, at the seat of justice, etc.; but it is not necessary to set it out in the deed; and the form of the deed prescribed by statute plainly shows it was not intended to be set out. Sec. 50, ch. 22, Gen. Laws of 1859. Compare with sec. 86, ch. 15, R. S., 1849, and sec. 116, ch. 18, R. S. 1858; ch. 503, Laws of 1852; ch. 66, Laws of 1854; *Falkner v. Dorman*, 7 Wis., 388; 23 Wis., 613. The deed was protected by the statute of limitations. Sec. 5, ch. 138, Gen. Laws of 1861. 2. By the conveyances in evidence, Mears became the owner of Gallup's undivided one-half. As the title or interest of Mears did not accrue under the same instrument as that of David, and as it was not shown or claimed that there was any obligation, engagement or agreement between Mears and David relative to the payment of taxes, or purchase of outstanding titles, Mears had a right to fortify his title to the whole by purchase of the certificate, and obtaining a tax deed. In the principal case, the doctrine that one tenant in common will not be allowed to purchase in an outstanding title against his co-tenant, is limited to this state of facts, viz: when the tenants hold under the same instrument. *Van Horne v. Fonda*, 5 Johns. Ch., 388, 407; and this doctrine has not been carried further in the courts. Leading Cases in Eq., 96; *Matthews v. Bliss*, 22 Pick., 48; 21 Wis., 331. 3. The defendant is a *bona fide* purchaser. No attempt was made to show that he had any knowledge that Mears was the owner of the certificate. Unless he had notice, the acts of Mears would not affect him. 23 Wis., 292, 294. 4. The question of fact, whether Mears was ever the owner of the tax certificate, should have been submitted to the jury.

*Gabe Bouck*, for respondent :

1. The ownership of Mears, as a tenant in common with respondent's grantors, operated as payment or cancellation of the tax certificate. The courts will not even permit in such cases the buying ·of outstanding titles, etc. *Van Horne v. Fonda*, 5 John. Ch.,·406. This question is virtually disposed of in *Wright v. Sperry*, 21 Wis., 331. See *Williams v. Gray*, 3 Greenl., 297 ; *Baker v. Whiting*, 3 Sum., 476 ; 3 Shep., 455 ; *Criswel v. Altemus*, 7 Watts, 566 ; 1 Watts & S., 488. 2. The court could not leave the question of fact as to Mears being the owner of the tax certificate, etc., to the jury. There was no conflicting evidence as to that fact. Besides, it is too late to raise that point in this court, under a general exception. If the appellant wished the jury to pass upon that fact, he should have so specifically requested on the trial. *Winchell v. Hicks*, 18 N. Y., 558 ; *Hunt v. Maybee*, 7 id., 266 ; *Plumb v. C. M. I. Co.*, 18 id., 392 ; *Graser v. Steelwagen*, 25 id., 316. 3. This tax deed is void upon its face. (1) The sale purports· to have been made " at public auction,· at Oshkosh, in the county of Winnebago." The law requires the officer to sell the land " at public auction, at some public place, naming the same, at the seat of justice of the county ;" and further provides : " and if in any county no seat of justice shall be established, then at such public place therein as he shall select." Sec. 2, ch. 22, Laws of 1859. The form of deed leaves a blank for the place of sale. The court will take judicial notice that there is a *city* of Oshkosh, and also a *town* of Oshkosh. See page 79, R. S. 1858. To make this deed a valid one, two facts must appear as· to to the place of sale, viz : first, that it took place at the " seat of justice ;" second, " at some public place " at the seat of justice. . The law is very particular, by providing that the treasurer, in his notice, shall name such public place, and the blank left in the deed should be so filled as to show that the sale took place in compliance therewith. Blackwell on Tax Titles, 322. Counsel distinguished the case of *Huey v. Van Wie*, 23 Wis.,· 613. (2) The

treasurer has no authority to purchase or own county tax certificates, but, on the contrary, is prohibited by law; therefore such proceedings are void. *Knox v. Peterson*, 21 Wis., 247. *Woodman v. H. S. Clapp*, 21 Wis., 350, is not an analogous case. In *Stridde v. Saroni*, 21 Wis., 173, this point was made in the briefs, but the court did not pass upon it.

COLE, J.  In this case the court directed the jury to find for the plaintiff, doubtless upon the the theory that the tax deed was void as against the plaintiff.  In support of this ruling of the court below, it is insisted that the tax deed was void upon its face on account of the omission to state the *place* where the sale took place.  The deed recites, among other things, that the lot was sold by the treasurer of the county " at public auction, at Oshkosh, in the county of Winnebago, on," etc.  It is claimed that the law requires the deed further to recite that the sale was " at some public place," as, for example, at the " court house " in the city of Oshkosh ; or, if not at the court house, that it should show that the sale was " at some public place," stating where it was ; and that, unless the deed contains such a recital, it is void on its face.

The form of the tax deed is prescribed by chap. 22, Laws of 1859, and it is certainly far from being clear that the legislature intended this degree of particularity.  At all events, the form given does not recite that the sale was " at some public place," or at " the court house. "  Section 50.  Nor do we think that it is essential to the validity of the deed that it should contain such a recital.  For obvious reasons, the statute requires that the notice published by the county treasurer should state that the delinquent land will " be sold by him at public auction at some public place, naming the same, at the seat of justice of the county, that he may select," etc.  Section 2.  This, evidently, is for the purpose of informing the public and parties in interest where the sale will take place, so that they may attend if so disposed.  But after the sale, when the officer comes to execute

the conveyance, we cannot see that it would subserve any useful purpose for the deed to recite that the lands were sold "at the seat of justice," or at some other designated "public place." The presumption is that it was so sold. Of course, if we could say the legislature intended that the deed should contain such a recital, it would then be material, and the deed would be fatally defective without it. But we are unable to so hold from the form given in the statute.

It appears from the tax deed that the grantees therein held the tax certificate as "assignees of the treasurer" of the county. It is said that the treasurer had no authority to purchase or own county tax certificates. We suppose the land was bid off by the treasurer for the county, in this instance, for the want of other purchasers. The county has authority to purchase in such a case. Section 9, chap. 22, Laws of 1859.

Another objection taken to the validity of the tax deed is, that it appears from the evidence that the grantor of the plaintiff and one Mears owned the lot as tenants in common; that while they so owned it, Mears became the owner of the tax certificate upon which the tax deed was issued. The purchase of the tax certificate by Mears, it is claimed, must be regarded as a redemption of the land, and no tax deed could afterwards be issued upon the certificate, for the reason that one tenant in common is not permitted to purchase for his exclusive benefit an outstanding title with a view to become himself the sole owner of the property.

Without entering into any lengthy discussion of this question at the present time, we will say that we are not prepared to decide upon the facts disclosed, that Mears could not under any possible circumstances take a tax deed, even as against his co-tenant. It appears in evidence that he and his co-tenant, David, derived title to the lot under different conveyances, and that the premises were unoccupied by any one until the defendant took possession on the 7th of August, 1869. Now the doctrine that one tenant in common will not be allowed to purchase in

an outstanding title, and avail himself of the benefit of such title as against his co-tenant, is limited and qualified by some of the authorities. The rule cannot be said to be one of universal application, but depends somewhat upon the facts of the particular case. Tenants in common are bound to deal fairly with each other, and when they stand in such confidential relations in regard to one another's interest, that it would be inequitable to permit one to acquire a title solely for his own benefit, and expel his co-tenant, then he will be treated as a trustee for the share of his co-tenant. But it is suggested by some of the authorities that tenants in common are probably subject to this mutual obligation to preserve the estate for each other only when their interests accrue under the same instrument, or act of the parties or of the law, or where they have entered into some engagement or understanding with one another; for, it is said, persons acquiring unconnected interests in the same subject by distinct purchases, though it may be under the same title, are probably not bound to any greater protection of one another's interests, than would be required between strangers. Leading Cases in Equity, note to *Keech v. Sandford*, p. 96 ; *Roberts v. Thorn*, 25 Texas, 728 ; *Brittin v. Handy*, 20 Ark., 381. See also *Wright v. Sperry*, 21 Wis., 331–337. The evidence before us does not disclose whether indeed there were any peculiar relations of trust and confidence between David and Mears, which would render it inconsistent with the utmost good faith and duty on the part of the latter to acquire a tax title upon the entire lot. If nothing of the kind is shown, it may then be a serious question whether Mears could not take a tax deed upon the certificate, and hold it for his own benefit, the same as though he were a stranger to the title. The parties will have an opportunity of going into these matters on another trial, if they wish to ; and it is probably not desirable that we discuss the subject farther. There were questions of fact in the case which should have been left to the jury.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.