Millis *et al. v.* Roof.

Filed Dec. 20, 1889.

No. 14,003.

## Millis et al. *v.* Roof.

TENANTS IN COMMON.—*Title of Common Grantor.*—*Can not be Disputed.*— Where two or more persons claim title to real estate, under the same grantor, and through the same deed, neither will be permitted to deny that the grantor had the title which he assumed to convey. As between those claiming under the same instrument it will be conclusively presumed that the common grantor had the title which he assumed to

convey by the deed, under which both claim, and the plaintiff in establishing his claim need not go back of their common grantor.

SAME.—*Common Source of Title.*—*All Bound Thereby.*—Where the title or interest of tenants in common accrues under the same instrument, or act of the parties, or of the law, neither can deny the validity of the instrument or act, and each is bound to preserve the estate in good faith for the equal benefit of all.

SAME.—*Title from Disconnected Source.*—*Rights Under.*—It is only where one asserts an interest acquired from a source disconnected from that of his co-tenants, that he can dispute the validity of the interest held by them.

From the Henry Circuit Court.

*J. H. Mellett* and *E. H. Bundy,* for appellants.

*J. Brown* and *W. A. Brown,* for appellee.

MITCHELL, C. J.—This is an appeal from a judgment rendered in an action instituted by Julia Millis, and her husband, and two others, against John Roof. The purpose of the suit was to quiet the title in the plaintiffs to the undivided three-fourths of a certain tract of land described in the complaint. The court made a special finding of the facts, and stated its conclusions of law thereon, and the propriety of the conclusions of law stated is the only question presented for decision.

The only facts necessary to be stated are, that Michael Lewis died intestate, in the year 1847, seized of 120 acres of land in Henry county, leaving a widow and eleven children, who inherited his estate. Under the law as it then stood, the widow took, as dower, an estate for life in the one-third of the real estate owned by her husband at his death. Subsequently an unmarried daughter died intestate, whereupon one-half of her interest in the land was cast upon her mother, and the other half upon her surviving brothers and sisters. The interest of the widow had never been assigned or set off to her. Later on eight acres, out of the 120-acre tract, were set off, in partition proceedings, to John Conner, the grantee of one of the heirs, and still later, by like proceedings, forty-five acres more were set off in a body to James

Barnard, who had previously acquired the interest of six of the heirs, and who afterwards conveyed the tract set off to him to Elsey Anderson. · Afterwards the widow's entire interest in the whole tract was sold at sheriff's sale, and her title was acquired by George C. Larvin, who also became the owner of the eight-acre tract previously set off to Conner. Subsequently the shares of the three remaining heirs, whose interests had not been segregated otherwise than as above, were purchased by William B. Newby, who instituted partition proceedings, which resulted in setting apart to him $34\frac{1}{2}$ acres out of the 120-acre tract, leaving a tract containing $32\frac{1}{2}$ acres, which Larvin went into possession of in 1854, and claimed in virtue of his purchase of the interest which the widow derived from her husband, and through the death of her unmarried daughter. This controversy is confined exclusively to the $32\frac{1}{2}$ acres which Larvin acquired as purchaser of the widow's interest, as above. The court found that the widow was alive at the time the several proceedings in partition were instituted and perfected, and that while all those interested in the title were made parties, the remainder, after the death of the widow, had not been set off or referred to in any of those proceedings. The court also found that, in February, 1865, Larvin, being the owner of $\frac{3}{25}$ of the $32\frac{1}{2}$ acres, in fee simple, the interest derived by the widow through the death of her daughter, and $\frac{22}{25}$ thereof during the lifetime of the widow Lewis, the latter being the dower interest of the widow, conveyed the entire tract by warranty deed to Mary E. Ramer, who afterwards in like manner conveyed the whole tract by an absolute deed to Oliver Lockwood, who went into possession. In 1869 Oliver Lockwood conveyed the land to Daniel G. Lockwood, Julia Millis, Buchanan Ramer, and Oliver Ramer, as tenants in common, the last three of whom were the plaintiffs below. In 1872 Daniel G. Lockwood, one of the tenants in common, conveyed his undivided one-fourth interest to the defendant, John Roof, who took and retained possession of the land

under the title so derived until this suit was instituted. Upon the facts thus found the court stated, as a conclusion of law, that the plaintiffs, Julia Millis, Buchanan Ramer, and Oliver Ramer, were the owners of an undivided $\frac{3}{25}$ of the $32\frac{1}{2}$-acre tract, in fee simple, and of an undivided $\frac{22}{25}$ thereof during the lifetime of the widow Lewis. The effect of this conclusion, as between the parties to this suit, was to vest the entire remainder of the estate in the defendant Roof.

In support of the judgment below, it is asserted that the conclusions of law were correct, because the widow only acquired a small fraction of an interest in fee simple through the death of her daughter, her interest as widow being merely an estate for life in the undivided one-third, and that Larvin, her grantee, could acquire no greater interest than she had, and that the title of the plaintiffs can not rise higher than the source from which it was derived.

It will be observed that this is a controversy involving the respective interests of tenants in common in real estate, all of whom claim title from a common source. Both parties claim through Larvin, who while in possession under a deed for the whole, assumed to convey a fee simple title to the whole tract by a warranty deed to Mary E. Ramer, in 1865. Neither asserts any other title except such as they derived through the common source. The case, therefore, falls within the inflexible rule which holds that when two or more persons claim title to real estate under the same grantor, and through the same deed, neither will be permitted to deny that the grantor had the title which he assumed to convey. As between those claiming under the same instrument, it will be conclusively presumed that their common grantor had the title which he assumed to convey by the deed under which both claim, and the plaintiff in establishing his title need not go back of their common grantor. If the defendant asserts any other or superior title, or a title adverse to that under which the plaintiff claims, it lies upon him to

bring it forward. *Nitche* v. *Earle*, 117 Ind. 270; *Sherry* v. *Denn*, 8 Blackf. 542; *Turner* v. *First Nat'l Bank*, 78 Ind. 19; *Barnard* v. *Whipple*, 29 Vt. 401 (70 Am. Dec. 422); *Gilliam* v. *Bird*, 8 Iredell's Law, 280 (49 Am. Dec. 379, and note); *Clark* v. *Trindle*, 52 Pa. St. 492.

This rule has peculiar force and application between tenants in common. Accordingly it is uniformly held that one tenant in common can not deny the validity of the common source of title, while he himself claims, or remains, in possession under it; nor will he be permitted, while remaining in possession, to defend himself by proving a paramount title in some third person. Where the title or interest of tenants in common accrues under the same instrument, or act of the parties, or of the law, neither can deny the validity of the instrument, or act, and each is bound to preserve the estate in good faith for the equal benefit of all. *Bender* v. *Stewart*, 75 Ind. 88; *Hadley* v. *Musselman*, 104 Ind. 459; *Phelan* v. *Kelley*, 25 Wend. 389; *Olney* v. *Sawyer*, 54 Cal. 379; *Knolls* v. *Barnhart*, 71 N. Y. 474; *Keller* v. *Auble*, 58 Pa. St. 410; *Frentz* v. *Klotsch*, 28 Wis. 312; Freeman Cotenancy, section 152; Sedgwick & Wait Trial of Title to Land, section 291.

It is only where one asserts an interest acquired from a source disconnected from that of his co-tenants that he can dispute the validity of the interest held by them. It follows, that, as between the parties to this controversy, it is immaterial what the actual interest was which Larvin acquired. Since, being in possession, he assumed to convey a fee simple by a deed of general warranty, through which both parties claim title, both are now estopped to assert that this title and possession of their common grantor were not in conformity with his deed. The appellee having entered and continued in possession under that title can not, without connecting himself with some independent chain, or source, of title, draw the one in question under which he claims in common with his adversaries.

Millis *et al. v.* Roof.

This conclusion in no way militates against the rule that a person suing in ejectment, or to quiet his title, must affirmatively prove title in himself, and can not rely on the want of title in his adversary. The plaintiffs had shown title in themselves as against the defendant below when they showed the title of their common grantor.

Whether or not the parties were concluded by the several partition proceedings, so that the title acquired by Larvin could not be controverted after the termination of the life-estate of the widow, we need not now inquire. Upon this subject see *Watson* v. *Camper*, 119 Ind. 60; *Bowen* v. *Swander, ante,* p. 164; *Jordan* v. *Van Epps*, 85 N. Y. 427; *Cromwell* v. *Hull*, 97 N. Y. 209; *Janes* v. *Brown*, 48 Iowa, 568; *Shepherd* v. *Rice*, 38 Mich. 556. This question does not concern the parties to this controversy at this time.

The conclusion of law upon the facts found should have been that the plaintiffs below were the owners in fee simple of the undivided three-fourths of the land in question, and that the defendant owned the undivided one-fourth in fee simple.

Judgment reversed, with costs, with instructions to the court below to restate its conclusions of law in consonance with this opinion, and to enter judgment accordingly.

Filed Jan. 8, 1890.