No. 17,242.

## STEVENS ET AL. *v.* REYNOLDS.

CO-TENANCY.—*Tenants in Common.—Remote Grantee of Such a Tenant.*—A remote grantee of the undivided interest of a tenant in common—is tenant in common with the owner of the remaining interest in the property.

SAME.—*Tenants in Common.—Title.—Possession.*—As a general rule one tenant in common cannot deny the validity of the common source of title, or assert a paramount title or interest in some third person as against his co-tenant, while he claims or remains in possession.

SAME.—*Co-Tenant Purchasing Outstanding Title.—Trust.*—A purchase of an outstanding title by one of two co-tenants standing in such relation of trust and confidence as to preclude either from acting in hostility to the interests of the other, is not void, but the right of the other co-tenant is limited to sharing in the benefits of such purchase upon contribution of, or offer to contribute, his proportionate part of the purchase-money.

JUDGMENT.—*Notice by Publication.—Defect or Falsity of Affidavit For.—Collateral Attack.*—Defects or falsity of the affidavit upon which a notice by publication against non-residents is ordered, under section 320, R. S. 1894, does not render the judgment entered upon service by publication subject to collateral attack.

Stevens *et al. v.* Reynolds.

From the Clay Circuit Court.

*G. C. Moore,* for appellants.

*S C. Stimson, R. B. Stimson, H. A. Condit* and *A. M. Higgins,* for appellee.

MCCABE, J.—The appellee sued the appellants in the superior court of Vigo county, for partition of, and to quiet title to, certain real estate in the complaint described as situate in said county, consisting of an eighty acre tract of land. The venue was changed to the Clay Circuit Court. The superior court sustained a demurrer to the first, and overruled a demurrer to the second paragraph of the complaint. And the circuit court sustained a demurrer to the second paragraph of the separate answer of appellant Margaret A. Stevens. A special finding of the facts having been made on proper request, the court stated its conclusions of law thereon, overruled appellants' motion for a new trial, and rendered judgment, quieting appellee's title in and to one undivided half of said real estate after the court had defaulted the defendant Crawford, and ordered partition. There was no error in sustaining the demurrer to the second paragraph of the separate answer of appellant Margaret A. Stevens, because it was nothing more than a special denial of certain specific facts stated in the complaint, without which the plaintiff could not recover, her first paragraph of answer being a general denial of all the facts stated in the complaint. There was no need of two denials of the same facts.

The same question arises on the exception to the conclusions of law as arose on the demurrer to the complaint. Therefore, we will consider only the conclusions of law upon the facts found.

The special finding and conclusions of law are as follows:

"On August 26, 1876, Sarah McGrew acquired title to the southeast quarter, northwest quarter, and northeast quarter, southwest quarter, section 17, T. 13 N., R. 7 W., in Vigo county, Indiana. On February 25, 1880, said lands were sold as the property of Sarah McGrew to Josiah Locke, by the auditor and treasurer of said county, at private sale, for $79.27, as the taxes, penalty and costs of the years 1876, 1877, 1878 and 1879, all previous taxes on said lands having been paid.

"On January 29, 1881, in pursuance of a decree of the circuit court of said county of Vigo, against said Sarah McGrew, the sheriff of said county executed a deed conveying said lands to James M. Parkes, who died intestate seized of the same, leaving his wife, Mary J. Parkes, surviving as his widow.

"On July 11, 1882, tax deeds for said lands were executed by the auditor of said county to Josiah Locke, in pursuance of said tax sale.

"On September 18, 1882, the circuit court of Putnam county, Indiana, in which the settlement of the estate of said James M. Parkes was pending, caused its commissioner, on the petition of the administrator of said estate, to execute a deed for the undivided two-thirds of said lands to the plaintiff James M. Reynolds, and the defendant John L. Stevens, to procure funds to pay the debts of the said estate which was insolvent; and on the same day said widow, Mary J. Parkes, executed a deed conveying to said James M. Reynolds and John L. Stevens the other undivided one-third of said lands, which deeds were duly acknowledged and recorded in the office of the recorder of said county of Vigo, April 9, 1884, by which conveyances said James M. Reynolds

and John L. Stevens became each the owner of an undivided half of said lands as tenants in common.

"On March 29, 1884, said John L. Stevens, and the defendant Margaret A. Stevens his wife, conveyed their undivided half of said lands to their son-in-law Frank H. Eaton, by warranty deed, which was acknowledged and recorded in the office of said recorder, April 9, 1884.

"On April 21, 1884, said Eaton and his wife, by their warranty deed, conveyed said undivided half of said lands to said Margaret A. Stevens, which deed was acknowledged and recorded in the office of said recorder, December 10, 1885, by which deed the said Margaret A. Stevens became the owner of an undivided half interest in said lands as a tenant in common with said James M. Reynolds.

"On July 3, 1884, said Josiah Locke filed his complaint in the superior court of said county of Vigo, to quiet his title by virtue of said tax deed, making parties defendant thereto said James M. Reynolds, John L. Stevens, Frank H. Eaton and others, not including said Margaret A. Stevens.

"On March 2, 1885, said Locke and his wife conveyed said lands by quitclaim deed to Stoughton J. Fletcher and Francis M. Churchman, which deed was acknowledged and recorded in the office of said recorder April 11, 1885.

"On June 4, 1885, on suggestion of the death of said Josiah Locke, said Fletcher and Churchman were substituted as plaintiffs in said action; and the defendants, not having appeared, were defaulted, and thereupon a judgment was rendered against them quieting the title of said Fletcher and Churchman. The said James M. Reynolds, John L. Stevens, and Frank H. Eaton were notified of the pendency of said action to quiet title, as

non-resident defendants, by publication and not other-wise, and said James M. Reynolds had no actual knowl-edge or notice of such proceedings until after the rendi-tion of said judgment, nor until in the spring of 1891. Notice by publication was ordered on motion and affidavit that after diligent inquiry the residence of said defendants was unknown, but without any proof on non-residence. At the time of said proceedings said James M. Reynolds resided in Tippecanoe county, Indi-ana, John L. Stevens resided in Putnam county, Indi-ana, and Frank H. Eaton resided in Clay county, Indiana, and their respective places of residence were shown in their title deeds then on record as aforesaid. Said Reynolds has ever since continued to reside in said Tippecanoe county, in the city of Lafayette ; said John L. Stevens and Margaret A. Stevens removed to Terre Haute in Vigo county, in December, 1884, and resided there three years.

"At the time James M. Reynolds and John L. Stevens acquired title to said lands as aforesaid, Sep-tember 18, 1882, John R. Brown was in possession of the same as the tenant of said James M. Parkes for a cash rental of $75.00 a year, which had been paid for the year 1882. Said Brown attorned to said Reynolds and Stevens and agreed to pay $75.00 rent for the year 1883, and $100.00 a year thereafter. Said Reynolds thereupon left the management of said common prop-erty to said co-tenant John L. Stevens, who was also in custody of their title deeds, and said Reynolds knowing nothing of said tax encumbrance, and relying upon his co-tenant to collect and apply the rents for their mutual interest, learned nothing of said proceedings to quiet title, nor of said conveyance to Frank H. Eaton and Margaret A. Stevens, nor of the facts hereinafter stated until 1891.

"In November, 1886, said Margaret A. Stevens without the knowledge of said James M. Reynolds, for the purpose of securing to herself the title to the entire interest in said lands, and designing thereby to oust her said co-tenant, by John E. Stevens, her son and agent, entered into negotiations with said Fletcher and Churchman for the redemption of said lands from the encumbrance of said tax sales, tax deeds, and decree quieting title ; said agent falsely represented himself as the agent of said James M. Reynolds and other defendants in said proceeding to quiet title, and induced said Fletcher and Churchman to consent to such redemption in consideration of the payment of $304.00, the estimated sum of the taxes, interest, penalty and costs then accrued upon said tax sales, and including nothing additional thereto except taxes paid on said land by said Fletcher and Churchman subsequent to said decree. Said lands were at the time worth $5,000 00, and were held by said Fletcher and Churchman at $8,000.00 ; but they were induced to permit such redemption, upon the representation that the notice to said defendants was insufficient, that the affidavit upon which the court ordered publication was false in that diligent inquiry was not made to learn their place of residence.

"Upon said consideration and inducement, said Fletcher and Churchman, on March 3, 1887, by the direction of said John E. Stevens, executed their release and quitclaim for the whole of said lands to said Margaret A. Stevens, which deed was recorded in the office of said recorder, March 8, 1887, since which date the said Margaret A. Stevens has claimed the exclusive ownership of said lands.

"On July 14, 1890, said Margaret A. Stevens and said John L. Stevens, her husband, executed their mortgage upon the entirety of said lands to the defend-

ant Charles M. Crawford to secure the payment of three promissory notes for $933.33 each, executed by said Margaret A. Stevens, December 16, 1887, to Benjamin B. Briggs, payable in one, two and three years after date, in consideration of which mortgage the payment of said notes was extended to one, two and three years from June 16, 1890.

"Said John L. Stevens collected all the rents of said lands up to May 21, 1884, and appropriated the same to his own use. On May 21, 1884, when his undivided half interest was conveyed to said Margaret, and John L. Stevens collected rents of said John R. Brown previous to the commencement of this action, the sum of $265 in cash and the sum of $—— in labor, in mining coal, as hereinafter stated, and $—— in labor, in improving said land, and Margaret A. Stevens collected rents of said Brown to the amount of $25.. In March, 1889, said John R. Brown ceased to occupy said lands, and during the remainder of said year the land was not rented. During the year 1890 a portion of said lands was rented by said John L. Stevens to Robert Munkhouse for $60.00, of which $10.35 was paid to said John L. in cash, and the remainder in labor in betterment of the land.

During the years 1891 and 1892 the land was not rented. The land was rented by said John L. Stevens for the year 1893 to James Downs, who is still in possession, and has paid the full rent in advance to said John L. Stevens, ten dollars in cash, and some cows for the remainder. The rental value of the land up to March, 1889, was $100 a year; since which, by reason of deterioration of the premises, it has only been worth a rental of $75 a year. In addition to the sums paid to John L. Stevens, as aforesaid, said John R. Brown, in

1888, paid to Margaret A. Stevens in person $25 cash on rent of said land.

In September, 1888, said John L. Stevens entered upon said lands, opened a coal mine and operated the same until the latter part of February, 1889, during which time he mined and marketed 6,000 tons of coal, which was at that time worth a royalty of five cents per ton, in the mining of which coal John R. Brown worked out a part of his said rents, as aforesaid.

On February 5, 1891, said James M. Reynolds paid $39 taxes on said lands, and in the spring of 1891 first learned by a stranger, of the said tax sales and of said conveyances to said Margaret A. Stevens, and wrote for information to said John L. Stevens, which letter was intercepted by said Margaret A. Stevens, with the intent to keep concealed from said Reynolds the facts in the case, and thereby to prevent him from taking any steps toward securing a share in the possession, rents and profits of said lands. Said Margaret A. Stevens has paid taxes on said lands as follows: April 18, 1887, $7.22; November 7, 1887, $6.23; April 18, 1892, $22.40; November 7, 1892; $18.89. Said James M. Reynolds has received no part of the rents and profits of said lands.

Upon the foregoing facts the court states the following conclusions of law:

"1.   That the plaintiff James M. Reynolds, and the defendant Margaret A. Stevens, are equal tenants in common of said lands, and the plaintiff is entitled to partition of said land and an accounting.

2.   That in such an accounting the defendant should be allowed, on account of redemption of said lands, $152 and $10 attorney's fee, with six per cent. interest on said sums from March 3, 1887; she should also be allowed one-half of the taxes paid by her on said land,

with six per cent. interest on each item from time of payment.

3.    That defendant should be charged with one-half of rent collected by her or one-half of $25, and interest on same at six per cent. from 1888, and with one-half of $39 taxes paid by plaintiff in 1891, and interest on same at six per cent. from February 5, 1891 ; that the balance due on said accounting in favor of defendant is $215.24, and that said defendant should have judgment for the same against the plaintiff, and that the same be a charge upon the interest of plaintiff in said land."

These conclusions are not as definite and specific as could be desired.    There are several propositions sought to be maintained by the appellee as law, either of which, if sound and applicable to the facts found, would support and justify the conclusions of law stated.    It is first contended that the purchase by Margaret A. Stevens from Fletcher and Churchman enured to the equal benefit of the appellee Reynolds, subject only to his liability to contribute his *pro rata* share of the expense of making the purchase or redemption, as it is called ; because it is claimed that appellant Margaret A. Stevens, and appellee, James M. Reynolds, were tenants in common in their ownership of the land.    And in the second place it is contended that the decree quieting the title in Fletcher and Churchman is not binding and conclusive on the defendants therein, among whom was the appellee Reynolds, because the decree was rendered without other notice than publication, and five years had not elapsed from the rendition of the decree until the deed was made by Fletcher and Churchman to Mrs. Stevens, the decree having been rendered June 4, 1885, and the deed made March 3, 1887.    Consequently it is contended that the defendants in that decree had yet legal standing in court and were not

concluded by reason of the fact that they could have had the decree set aside, and a new trial granted as of right, and have made as full a defense as if they had appeared and answered before default, under sections 609, 610, R. S. 1894; R. S. 1881, sections 600, 601, providing for opening a default taken without other notice than by publication in a newspaper.

And it is thirdly contended that the purchase by appellant Mrs. Stevens from Fletcher and Churchman was, in legal effect, a redemption from them and their tax title. We have no means of knowing which one of these propositions it was that the trial court adopted as the basis for its conclusions of law, or that it did not adopt them all. There can be no question that the conveyance by the commissioner of the Putnam Circuit Court, to appellee James M. Reynolds and John L. Stevens, to make assets to pay the debts of the estate of James M. Parkes, deceased, and his widow, at the same time conveying her undivided third of said real estate to the same grantees, made said Reynolds and John L. Stevens tenants in common in the land. The conveyance afterwards by said Stevens and his wife to their son-in-law, Eaton, and the conveyance by said Eaton and his wife to appellant Margaret A. Stevens, made her a tenant in common with appellee James M. Reynolds in the land. R. S. 1894, sections 3341, 3342; R. S. 1881, sections 2922, 2923. *Fountain County, etc., Co.* v. *Beckleheimer*, 102 Ind., at page 85; *Jennings* v. *Moon*, 135 Ind. 168.

The principal contention of appellee's counsel in support of the conclusions of law is best expressed in the language borrowed by this court and cited by appellee's counsel in *McPheeters* v. *Wright*, 124 Ind. 560, at page 572, from 11 Am. and Eng. Ency. of Law, page 1082: " 'The general rule is that a co-tenant's purchase of an

outstanding title enures to the benefit of all, whether the several interests of the different tenants accrue under the same instrument, under different instruments, or by acts of law, and in some States this rule seems to apply, however the tenancy may have been formed, whatever the relation the co-tenants with each other may have been, and from whatever source the outstanding title may have been acquired. * * * But in other States this rule applies only when tenants stand in some confidential relation in regard to one another's interest, so that it would be inequitable to permit one to acquire a title solely for his own benefit, in which case he will be treated as a trustee for the share of his co-tenants, but persons acquiring unconnected interests in the same subject are not, it appears, bound to any greater protection of another's interests than would be required of strangers.'" The general rule seems to be that one tenant in common cannot deny the validity of the common source of title while he himself claims or remains in possession thereunder; nor will he be permitted, while remaining in such possession, to defend by proving a paramount title or interest in some third person, where the title or interest of such tenants accrues under the same instrument or act of the parties or of the law; neither can deny the validity of the instrument or act, and each is bound to preserve the estate in good faith for the equal benefit of all. *Millis* v. *Roof,* 121 Ind. 360; *Elston* v. *Piggott,* 94 Ind. 14. Neither of such tenants can acquire an outstanding lien or title and thereby oust his co-tenants, or do any other act to prejudice or injuriously affect their interest in the common property, because the relation between them is one of trust and confidence; the only right such a purchase or acquirement confers on the co-tenant securing it is to compel contribution to the expense thereof. *Elston*

v. *Piggott, supra*; *Tanney* v. *Tanney*, 159 Penn. St. 277; s. c. 39 Am. St. R. 678; *Carpenter* v. *Carpenter*, 131 N. Y. 101; s. c. 27 Am. St. R. 569; *Ramberg* v. *Wahlstrom*, 140 Ill. 182; s. c. 33 Am. St. R. 227; *McPheeters* v. *Wright, supra*. But it may be doubted whether the case now before us falls within the rule above stated. The appellant Margaret A. Stevens did not acquire the interest that made her a tenant in common with Reynolds either by the same deed by, or at the same time at, which Reynolds acquired his interest. An eminent author, Freeman on Co-tenancy and Part., section 155, says: "As the rule forbidding the acquisition of adverse titles by a co-tenant, from being asserted against his companions, is always said to be based upon considerations of mutual trust and confidence supposed to be existing between the parties, the question naturally arises whether the rule is applicable where the reasons on which it is based are absent. Joint tenants, tenants by entirety and co-parceners always held by and under the same title. Their union of interest and of title is so complete, that beyond all doubt such a relation of trust and confidence unavoidably results therefrom that neither will be permitted to act in hostility to the interests of the other in reference to the joint estate. Tenants in common, on the other hand, may claim under separate conveyances and through different grantors. Their only unity is that of right to the possession of the common subject of ownership. As their connection is not necessarily so intimate as that of other co-tenants, it may well be doubted whether they should always be subject to the restraints imposed upon the others. There are many cases in which the rule in regard to the acquisition of an adverse title by a co-tenant is spoken of in general terms as applying to tenants in common, irrespective of their special and actual rela-

tions to one another. But an examination of the decisions clearly shows that tenants in common are not necessarily prohibited from asserting an adverse title. If their interests accrue at different times, and under different instruments, and neither has superior means of information respecting the state of the title, then either, unless he employs his co-tenancy to secure an advantage, may acquire and assert a superior outstanding title, especially where the co-tenants are not in joint possession of the premises." Citing *Roberts* v. *Thorn*, 25 Tex. 728 (736); *Frentz* v. *Klotsch*, 28 Wis. 312 (317); *Wright* v. *Sperry*, 21 Wis. 336; *Brittin* v. *Handy*, 20 Ark. 381; *Matthews* v. *Bliss*, 22 Pick. 48; *Rippetoe* v. *Dwyer*, 49 Tex. 498; *King* v. *Rowan*, 10 Heisk. 675.

And this court asserted the same doctrine in *Elston* v. *Piggott, supra.* In that case Elston had purchased Piggott's farm at the sale of Piggott's assignee in bankruptcy, the bankrupt having a wife at the time. That sale made Elston the owner of the undivided two-thirds of the land and Piggott's wife the owner of the other third as tenants in common. A mortgage executed by Piggott and wife on the same land which had been sold on foreclosure sale on said mortgage, and Elston, after his purchase at the assignee's sale, purchased the certificate of the foreclosure sale, and at the expiration of the year got a sheriff's deed thereon and then sued Piggott and wife for possession. It was contended on behalf of Mrs. Piggott that as the relation of tenants in common in the land existed between her and Elston when he bought the certificate of the foreclosure sale it gave Elston no title as against her but enured to her benefit, and that Elston required nothing only a right to enforce contribution against her. It was there said by Elliott, J., speaking for the court, that "The question

which is next encountered may be thus stated : Does the fact that the appellant, at the time he acquired the certificate of sale issued on the decree of foreclosure rendered on the mortgage executed by Albert Piggott, the husband, and Martha J. Piggott, the wife, held a conveyance for two-thirds of the land from the assignee in bankruptcy of Albert, the husband, executed after the sale on the decree, preclude him, the appellant, from asserting against Martha J., the wife, the title founded upon the deed executed upon the foreclosure sale?

"Appellee's counsel contend that the appellant is precluded from asserting title under the foreclosure sale, because he was, as they affirm, a tenant in common with Martha J. Piggott, and could not, therefore, buy in an outstanding lien and build a title on it. The general rule unquestionably is, that one tenant in common cannot, by purchasing an outstanding lien, acquire a title which will evict his co-tenant. This rule, however, is subject to many·exceptions and obtains only where the relation of tenants in common exists in strictness, and where the relation is such as to require mutual trust and confidence. It is impossible to perceive how one who buys at a sale made by an assignee in bankruptcy of the husband's interest becomes charged in such a case as that embraced in our general question, with duties of trust and confidence to the wife of the bankrupt. The title is not a common one ; the interests are not reciprocal, and there is no fiduciary relationship created. The title is secured by virtue of a judicial sale, and not by the same instrument, nor from the same source as that from which the wife's claim is derived. There is, we repeat, nothing in such a case to create relations of trust and confidence, and, therefore, the reason of the rule applicable to ordinary cases fails, and the time-honored doctrine is, that where the reason

of the rule ceases so does the rule itself. An examination of the cases will show that we are right in stating that the reason of the rule is that the relationship is one imposing trust and confidence and requiring the tenants not to assume positions of hostility. Mr. FREE-MAN says," and then is quoted the section of Freeman on Co-tenancy and Partition, which we have already quoted above, citing the authorities there cited. And the conclusion of this court in that case was that the title of Elston, founded on his purchase of the outstanding lien against the land held by him and Mrs. Piggott as tenants in common, was good against her and sufficient to oust her from possession.

Here the interest of Margaret A. Stevens accrued at a different time and under a different instrument from that at and under which the title of James M. Reynolds accrued. See *Vasquez* v. *Ewing*, 24 Mo. 31; s. c. 66 Am. Dec. 694; *Coleman* v. *Coleman*, 3 Dana (Ky.) 398; s. c. 28 Am. Dec. 86.

But assuming without deciding that the tenancy here was of such a character as to create the relation of trust and confidence between Mrs. Stevens and Reynolds, precluding either from doing any act in hostility to the interests of the other; yet, there are some other questions which must be determined favorably to the appellee before that principle can avail him in this case. The evident theory upon which the complaint proceeds is that Mrs. Stevens' purchase from Fletcher and Churchman was voidable as against appellee, on account of the relation of co-tenancy between them and on account of the alleged defect in the notice to the defendants in the decree quieting the title in Fletcher and Churchman, and not on account of any fraud practiced by Mrs. Stevens in inducing them to convey to her.

There is no allegation in the complaint that the plaintiff desired to share in the benefits of that purchase, or that he had ever offered to share in the burdens thereof; nor is there any offer in the complaint to pay his share of the purchase-money, or that it may be charged to him in the accounting for rents. The first time that anything appears in the record recognizing the plaintiff's liability to contribute to the payment of the purchase-money for the conveyance by Fletcher and Churchman to the defendant Mrs. Stevens is found in the conclusions of law. But the plaintiff excepted to them as well as the defendant. The plaintiff's exceptions, however, do not disclose that he excepted because Mrs. Stevens' purchase was not declared void as against the plaintiff. But the theory of the complaint to that effect was further evidenced by the plaintiff seeking in the complaint to quiet his title as against a mortgage executed by Mrs. Stevens, with her husband, on the land after her purchase from Fletcher and Churchman to secure a debt of $2,800 to the defendant Crawford.

Though the complaint did not charge Crawford with any knowledge of any of the facts whatever, yet the decree following the theory of the complaint, that Mrs. Stevens' purchase was void, quieted the plaintiff's title against the defendant Crawford's mortgage.

Mr. Freeman, from whom we have quoted above on the point now in hand, in section 156, says: "The purchase made by a co-tenant * * is not void, nor does the interest so acquired by him, or any part of it, by operation of law, vest in his co-tenants. They may not wish to share in the benefits of his purchase; for, in their judgment, the title purchased by him may not be paramount to that before held in common. The law gives them a privilege which they may assert. This privilege consists in the right to obtain a conveyance of the

title bought in, upon their paying their share of the price at which it was bought.   The privilege may be waived by an express refusal to reimburse the co-tenant for his outlay, or by such a course of action as necessarily implies such a refusal.   The right of a co-tenant to share in the benefit of a purchase of an outstanding claim is always dependent on his having, within a reasonable time, elected to bear his portion of the expense necessarily incurred in the acquisition of the claim.   A most natural and material inquiry, then, is,what is a reasonable time?   To this inquiry no positive answer can be given.   In this, as in all other questions in regard to reasonable time, no doubt each case must necessarily be determined upon its own peculiar circumstances.   The co-tenant asking a court of equity to award him the benefit of a purchase, must show reasonable diligence in making his election.   Whatever delay he may have occasioned must be entirely consistent with perfect fair dealing on his part, and in nowise attributable to an effort to retain the advantages while he shirks the responsibilities of the new acquisition."

An additional reason why the complaint in this case proceeded upon the theory that Mrs. Stevens' purchase was void, because of the relation of co-tenancy and defective notice to Reynolds, is found in the fact that the complaint did not ask to have a conveyance made to him upon the plaintiff paying his share of the price; and the further fact that it is not alleged that the plaintiff elected within a reasonable time, or that he ever elected,to bear his portion of the expense and share in the benefits of the purchase.   Nor was there any finding of these facts, and if there had been they would have been outside of the issues, and without force for that reason.   Neither is there any conclusion of law that the appellee was entitled to such a conveyance; and

if there had been, it would have been erroneous for want of the fact found to rest upon. Therefore, the conclusions of law stated can only rest upon the assumption that Mrs. Stevens' purchase was void in law, on account of the relation of co-tenancy or want of notice to the defendants in the decree quieting Fletcher and Churchman's title. That is erroneous, even though the facts found should be held to establish that character of co-tenancy between the parties that carries with it the relation of trust and confidence which precludes either from acting in hostility to the interests of the other, unless Fletcher and Churchman's decree was void for want of notice to the defendants therein.

There is no claim in appellee's brief that it was void or invalid for that reason or for the reason that the publication notice of that proceeding was procured on an affidavit that after diligent inquiry the residence of the defendants was unknown, though they all resided in this State. The statute authorized such a notice on such an affidavit. R. S. 1894, section 320; R. S. 1881, section 318. Defects in the affidavit, or its falsity, will not subject the judgment to collateral attack. *Dowell* v. *Lahr*, 97 Ind. 146; *Quarl* v. *Abbett*, 102 Ind 233; *Essig* v. *Lower*, 120 Ind. 239; *Goodell* v. *Starr*, 127 Ind. 198. Nor did the fact that the judgment was liable to be opened up on application to let in a defense impair its conclusive force so long as it stood unopened. R. S. 1894, section 609; R. S. 1881, section 600.

We need not and do not decide what effect the fraud of Mrs. Stevens, as stated in the special finding, had on her deed from Fletcher and Churchman, because the facts concerning such fraud stated in the special finding are outside of the issues, and for that reason must be disregarded. *Neutz* v. *Jackson Hill Coal and Coke Co.*, 139 Ind. 411, and authorities there cited; *Brown*

v. *Will,* 103 Ind. 71; *Thomas* v. *Dale,* 86 Ind. 435; *Town of Cicero* v. *Clifford,* 53 Ind. 191; *Boardman* v. *Griffin,* 52 Ind. 101.

The circuit court erred in its conclusions of law.

The judgment is reversed and the cause remanded, with instructions to grant leave to reform the issues if the appellee shall desire to amend his complaint.

Filed November 8, 1895; petition for rehearing overruled January 24, 1896.